GREEN v. GREEN *et al.*, *Appellants*.

**Division One, December 22, 1894.**

1. **Void Marriage:** LEGITIMACY OF CHILDREN: STATUTE. Under Revised Statutes, 1889, section 4475, providing that "the issues of all marriages decreed null in law or dissolved by divorce shall be legitimate," a decree annulling the marriage is not necessary in order to render the children legitimate, there being evidence that would justify the court in declaring the marriage null and void.

2. ———: ———: ———. Where defendant married decedent in good faith, believing him competent to enter into such contract, their children are legitimate under Revised Statutes, 1889, section 4475, though at the time of the marriage decedent had a wife living.

3. ———: ———: HUSBAND'S ESTATE: WIDOW'S ELECTION: DOWER. Such children being capable of inheriting, the legal widow can not elect to take one half of her husband's estate under Revised Statutes 1889, section 4518, but is restricted to her dower rights as provided in section 4513.

*Appeal from Polk Circuit Court.*—J. G. SIMPSON, *Esq.,*
Special Judge.

REVERSED AND REMANDED.

*Upton & Skinker* for appellants.

(1) Plaintiff was not a competent witness to prove her marriage with Wm. Green. *Chapman v. Daugherty,* 87 Mo. 617; *Meier v. Thieman,* 90 Mo. 433. (2) The records of the conveyances to Wm. Green were not the best evidence, and appellant's objection to their introduction should have been sustained. (3) The conveyances from Mitchell and others, who were not shown to have had any title, do not prove title in Wm. Green. But plaintiff, in order to recover, must not only show that Wm. Green at some time during his marriage was

Green v. Green.

seized of an estate of inheritance in these lands, but she must also show that he owned these premises at the time of his death. R. S. 1889, sec. 4518. (4) The evidence does not show that appellants were in possession of lots 6 and 16 at the time this suit was commenced. (5) Plaintiff having failed to file her election in the recorder's office until after the commencement of this suit such election can avail her nothing in this cause, and the judgment in her favor for a half interest was erroneous. R. S. 1889, sec. 4522; *Matney v. Graham*, 50 Mo.559; *Griffith v. Canning*, 54 Mo. 282; *Brawford v. Wolf*, 103 Mo. 391. (6) There being another case pending at the time this suit was instituted, in which the parties were identical, and in which the subject-matter was substantially identical, said first suit is a bar to this one, and this cause should have been dismissed. R. S. 1889, sec. 2043. (7) Victoria Green married Wm. Green in good faith; the marriage was duly solemnized, and they lived together as husband and wife until the death of Wm. Green. The minor defendants herein being the issue of such marriage, they are clearly legitimate and capable of inheriting. R. S. 1889, sec. 4475; *Lincecum v. Lincecum*, 3 Mo. 441; *Johnson v. Johnson's Adm'r*, 30 Mo. 72; *Buchanan v. Harvey*, 35 Mo. 276; *Dyer v. Brannock*, 66 Mo. 391; 1 Bishop on Marriage, Divorce and Separation, sec. 726; *Adams v. Adams*, 28 N. E. Rep. 260.

*Hudson, Underwood, Rechow* and *Pufahl* for respondent.

(1) The manner of swearing and examining a witness is within the sound discretion of the court. *State v. Howard*, 118 Mo. 143; 5 Am. and Eng. Encyclopedia of Law, p. 119, and cases cited. (2) Plaintiff was a competent witness to prove her marriage to William

Green.  *White v. Maxcy,* 64 Mo. 560; *Spradling v. Conway,* 51 Mo. 54; *Garvin's Adm'r v. Williams,* 50 Mo. 206; *Hoyt v. Davis,* 30 Mo. App. 309.  (3)  The records of conveyances to William Green were competent, especially so in this case, when the original must have been in possession of defendant, Victoria.  R. S. 1889, sec. 4861; *Frank v. Reuter,* 116 Mo. 521; *Baum v. Sauer,* 117 Mo. 466.  (4)  William Green is conceded to be the common source of title; and was in possession of the premises sued for during his lifetime, and defendants claim under him, so that if plaintiff has shown a prior right under William Green she was entitled to recover.  *Holland v. Adair,* 55 Mo. 40; *Bank v. Manard,* 51 Mo. 548; *Smith v. Lindsey,* 89 Mo. 79; *Finch v. Ullman,* 105 Mo. 255; *Ebersole v. Rankin,* 102 Mo. 488.  (5)  When premises are temporarily vacant ejectment is properly brought against the person who exercises the usual acts of ownership over the same. *Phillips v. Phillips,* 107 Mo. 360.  (6)  Issue of a marriage void in law are bastards, and can not inherit from the reputed father.  *Pratt v. Pratt,* 5 Mo. App. 539; Stewart on Marriage and Divorce, sec. 76; Bishop on Marriage and Divorce, sec. 272.  (7)  The marriage of Wm. Green to plaintiff was not only proven by plaintiff herself, but also by the testimony of Mrs. Yost. *State v. Cooper,* 103 Mo. 266; *State v. Ulrich,* 110 Mo. 366. (8)  No appeal lies from an order appointing an administrator.  The judgment of the circuit court on appeal setting aside the appointment of Elias Walts as administrator was void.  *State ex rel. v. Fowler,* 108 Mo. 465; Woerner's Am. Law of Administration, sec. 543; *Kenrich v. Cole,* 46 Mo. 85.  But if the judgment was valid, yet acts done up to the time of the order of revocation are valid.  In this case the election was filed September 8, 1891, and the judgment revoking the order ordering the estate into the hands of the public administrator

was not made until October 28, 1891. *Fithian v. Monks*, 43 Mo. 520; *Johnson v. Beazley*, 65 Mo. 251. (9) Ejectment is the proper remedy even for common law dower, when the parties claim adverse to the dowress, as the defendants herein do. *Miller v. Talley*, 48 Mo. 503; *Roberts v. Nelson*, 86 Mo. 21; *Colvin v. Hauenstein*, 110 Mo. 582, and cases cited.

MACFARLANE, J.—The suit is ejectment to recover the undivided half of certain lots in the town of Humansville, Polk county. The answer was a general denial and a plea of the pendency of another suit in the same court, between the same parties for the possession of the same property. The trial was to the court without a jury and resulted in a verdict for the plaintiff and defendants appealed.

The following facts were developed at the trial: About the year 1878, William Green, who represented himself as being a single man was married in due form to defendant Victoria Rogers. Two children, defendants Fannie Green and William M. Green were born of the marriage. The said William Green died testate about the month of March, 1889, possessed of the land in question. By his will he left to defendant Victoria a life estate in said property with remainder to his said children. Defendant Victoria was made executrix but failed to qualify, and on the thirtieth day of May, 1891, the estate was, by the probate court of the county, ordered into the hands of the public administrator for administration.

On the second day of September, 1891, plaintiff executed, acknowledged and filed in the probate court of Polk county the following paper:

"Know all men by these presents, that I, Rebecca Green, widow of William Green deceased, who departed this life on the twenty-third day of March, A. D. 1889,

at the city of Humansville in the county of Polk and state of Missouri, do hereby declare my intention to elect to be endowed in the property of the said William Green, deceased, both real and personal, in accordance with and under and by virtue of section 4518 of the Revised Statutes of 1889, and chapter 55 of said statutes concerning dower, and of the Revised Statutes, 1879, section 2190."

Plaintiff offered evidence tending to prove that in July, 1851, plaintiff and the said William Green were married in the county of Cork, Ireland, and that no children were born of the marriage. That in December, 1877, said her husband abandoned her and came to the United States. That she had no knowledge of where he went until after his death, and they were never divorced.

At the request of plaintiff the court gave, among others, this declaration of law:

"That, although it may be shown from the evidence that the said Wm. Green may have contracted a second marriage with the defendant Victoria Rogers (alias Victoria Green), which marriage may have been duly solemnized under the forms of law, and if of the result of said marriage there was certain issue born who are the codefendants in this action, yet if it be shown from the evidence that at the time of contracting said second marriage he had a former wife living in the person of this plaintiff then said second marriage was void and the defendants William and Fannie Green are nor capable of inheriting from the said Wm. Green, and the said Victoria is entitled to no rights as a result of said marriage."

The court refused the following declaration of law asked by defendants:

"The minor defendants herein are capable of inheriting, and, therefore, plaintiff can acquire no

rights in the property of Wm. Green by filing her election under the statute."

The question is whether the children of the marriage of William Green to defendant Victoria are capable of inheriting from their father so as to defeat the right of plaintiff to elect under section 4518.

I.  The policy of our law is to make legitimate children of all marriages contracted honestly and in good faith by one of the parties.   The children of such marriages when entered into in good faith by one, or both of the parties, should not in right be stigmatized as bastards, and disinherited on account of the fraud of one, or the honest misapprehension of both of the parents.   To carry out this policy remedial statutes have been passed modifying the harsh common law rule on the subject.   Thus our statute on the subject of divorce which gives one party a right to dissolve the marriage in case the other had a husband or wife living at the time it was contracted, expressly provides that no such divorce shall affect the legitimacy of the children.   Section 4500.   This provision has been retained on our statute books since the revision of 1845 and possibly longer.   Again, under our statute law of descents and distribution it was declared as early as 1825 that, "the issue of all marriages deemed null in law or dissolved by divorce shall nevertheless be legitimate." Revised Statutes, 1825, page 328, sec. 8.

This act came before this court for its construction as early as 1834, in case of *Lincecum v. Lincecum*, 3 Mo. 441.   The court says:   "The act does not pretend to make lawful those marriages which were null before, but it does act prospectively with regard to the children then in being.   It declares that they shall no longer be considered bastards.   That they shall henceforth be capable of inheriting and taking a distributive share, from their father or mother, when such parents

shall die intestate, leaving property. In this case the act of 1825 fixed and declared what the capacity of the children should be, if the father should die intestate." The same act came before this court for consideration in a number of subsequent cases and was given a liberal construction with a view of enforcing its spirit and intent. *Johnson v. Johnson's Adm'r*, 30 Mo. 72; *Buchanan v. Harvey*, 35 Mo. 276; *Dyer v. Brannock*, 66 Mo. 391. For the spirit in which such statutes should be treated, see *Marshall v. Railroad*, 120 Mo. 277.

The act of 1825 was continued in force through the revisions of 1835 and 1845 without change. In the revision of 1865 the word "deemed" used in the original act was changed to "decreed." So that the section reads: "The issue of all marriages decreed null in law, or dissolved by divorce, shall be legitimate." This change has been continued through the revisions of 1879 and 1889. R. S. 1889, sec. 4475.

Plaintiff now contends that under the act, as it now stands, the defendants are illegitimate and incapable of inheriting from their father, William Green, though his marriage to their mother was in entire good faith on her part. This contention is put upon the ground that there had never been a formal decree annulling the marriage. We do not think the legislature ever contemplated so radical a change in the law. If the change had only appeared in one revision we would not hesitate to hold that it was made through inadvertence. *Jones v. Driskill*, 94 Mo. 200; *Hyatt v. Wolfe*, 22 Mo. App. 191; *Turner v. Babb*, 60 Mo. 347.

But, assuming that the word decreed was used intentionally, we think it should not be given the meaning attributed to it by plaintiff. Such a meaning would make the act repugnant to the letter and spirit of other laws *in pari materia*, and to the manifest purpose of reforming and modifying the harsh features of the

common law.  To attribute to the word its common meaning, before a child of such a marriage could inherit from its father it would be required to obtain the judgment of a court of equity annulling the marriage.   A child could not inherit while both its parents were living, and could not maintain a proceeding to dissolve the marriage by a decree.  After the death of the parent, the child would be equally without a remedy as there would then be no marriage relation existing, or parties living, against whom a decree could be made.   The remedy would, therefore, be left to the mother alone who would have no pecuniary interest in the result, and her every natural and moral instinct would be against such a proceeding.  The word, then, as used in its technical sense, is almost meaningless in its practical effect.

Assuming, as we do, that the word ''decreed'' was intentionally used, we think the legislature did not intend that its meaning should be materially different from the word ''deemed'' used in the original act.   We think the act should be given a sensible and practical interpretation, and, if upon the trial of a cause in which the legitimacy of children is involved, the evidence shows such a state of facts as would justify a court of equity in declaring the marriage null and void, the children of such marriage would be legitimate by virtue of the statute.

The legislature may have contemplated that a decree to the effect that the marriage was void, should be entered when the fact is so found, and that may be the better practice, but we do not think it essential in order to give effect to the statute.

The evidence in this case abundantly shows that the marriage of William Green to defendant Victoria was solemnized in due form, and that the defendant acted in good faith under the belief that the man she

married was eligible. Under these circumstances, shown in evidence, though William Green at the time had a living wife, the children of the marriage were legitimate and capable of inheriting from their father.

The husband of plaintiff Rebecca Green then left surviving him, on his death, children capable of inheriting, and she was not entitled to elect to take one half of the estate of her deceased husband under section 4518. She is only entitled to dower as provided by section 4513.

A number of other questions were discussed, but in view of the conclusion reached they become immaterial. Judgment reversed without remanding. All concur.

### ON MOTION FOR REHEARING.

PER CURIAM.—On motion for rehearing it is insisted that, inasmuch as the evidence shows that the plaintiff, as the widow of William Green, deceased, under the right of quarantine, is entitled to the mansion house and premises thereto belonging, until dower is assigned her, and, as ejectment is the proper remedy to recover it when deforced of it, the judgment should still be affirmed. But it is evident that the right of possession was claimed at the trial solely under her election, and the right of quarantine, and the extent of the property to which she would be entitled under it, were not made issues. We will not pass upon that right without a hearing in the circuit court, but we modify the judgment by remanding the cause, in order that the rights of the parties in respect thereto may be settled in this court.

In view of a probable retrial we deem it proper to say that we are of the opinion that the court did not err in permitting plaintiff to testify to her marriage.

She was a competent witness under section 8918, Revised Statutes, 1889. She was not disqualified under the proviso of that section. As to the competency of plaintiff as a witness, BARCLAY, J., expresses no opinion.