PETER LEE et al. v. MARY ANN LEE et al., Appellants.

**Division One, March 12, 1901.**

1. **Descents and Distributions:** CHILDREN OF SLAVES.  Under the Missouri statute, the children of all persons who were slaves and who were living together in good faith as man and wife at the time of the birth of such children, are deemed to be legitimate; and the words "good faith" do not here mean that such slaves should have had the power to make a marriage contract.  Besides, where the slaves assumed the relation of husband and wife by the consent of their master, his consent supplied the technical power that they lacked to make a marriage contract.

2. **Partition:** HOMESTEAD: PLEADING.  In a partition suit, unless the petition or the widow's answer pleads a homestead, it can not be set off to her.

3. ————: POSSESSION: EJECTMENT.  The heirs of the decedent are not required to obtain possession of the land by ejectment before they can maintain partition, if the widow is lawfully in possession as such.

Appeal from Livingston Circuit Court.—*Hon. E. J. Broaddus,* Judge.

AFFIRMED.

*John E. Wait* and *Robert Miller,* with *Kitt & Kitt* for appellants.

Lee v. Lee.

(1)   The court erred in finding that plaintiffs were heirs at law of Handy Lee, deceased, and entitled to an interest in this land.  1 Bishop on M. D. & S., secs. 654 to 659; Johnson v. Johnson, 45 Mo. 595; Branch v. Walker, 102 N. Car. 32, 8 S. E. Rep. 896; State v. Harris, 63 N. Car. 1; Cantelou v. Hood, 56 Ala. 519; Harris v. Cooper, 31 U. C. Q. B. 182; Livingston v. Williams, 75 Tex. 653; Andrews v. Simmons, 68 Miss. 732; State v. Sapp, 10 S. C. 500; Pierce v. Fontenette, 25 La. Ann. 617; Wallace v. Kimball (Fla.), 26 L. R. A. 746; 1 Cooley's Blackstone (3 Ed.), sec. 2, p. 454; 2 Kent's Com. (13 Ed.), p. 212; Doe v. Vardill, 5 B. & C. 438; Brithwhistle v. Vardill, 7 C. L. & Fin. 817; Story Confl. Laws, sec. 93; Wharton, Confl. Laws, sec. 240; Bent v. St. Urian, 30 Mo. 268; Marshall v. Railroad, 120 Mo. 281; State v. Clinton, 67 Mo. 380; Dyer v. Brannock, 2 Mo. App. 449; R. S. 1899, secs. 2919 and 2920; Laws 1865, p. 23; secs. 12, 13, 14, 15, 16, chap. 113, G. S. 1865.   (2) The court erred in not finding that defendant Mary Ann Lee was entitled to the homestead in said land and further erred in ordering said land to be sold, the widow Mary Ann Lee not consenting thereto.   R. S. 1879, secs. 2689 and 2693. (3) The court erred in allowing plaintiffs to maintain partition without first establishing their rights by ejectment. Rozier v. Griffith, 31 Mo. 171; Wommack v. Whitmore, 58 Mo. 448; Shaw v. Gregoire, 41 Mo. 407; Snell v. Harrison, 131 Mo. 495; Hutson v. Hutson, 139 Mo. 229; Estes v. Nell, 140 Mo. 650.

*J. M. Davis & Sons,* with *James L. Minnis* and *Joseph Barton* for respondents.

(1)   Plaintiffs are heirs at law of Handy Lee.   Under the law of descent and distribution of this State, regulating

who shall inherit where children have been born of slave marriages, the finding for plaintiffs was correct.   R. S. 1899, sec. 2920; Woodward v. Blue (N. C.), 9 S. E. 492; Wallace v. Godfrey, 42 Fed. 812; Dyer v. Brannock, 66 Mo. 390 (overruling 2 Mo. App. 449); Johnson v. Johnson, 30 Mo. 72; Buchanan v. Harvey, 35 Mo. 276; Andrews v. Page, 3 Heisk. 653; Brown v. Cheatham (Tenn.) 17 S. W. 1033. (2)   Plaintiffs are not illegitimate children.   22 Am. and Eng. Ency. of Law, 794; Bishop on Marriage and Divorce (6 Ed.), sec. 163 b; Brown v. Cheatham (Tenn.) 17 S. W. 1033.   (3)   The law in America is that descent and distribution laws are regulated solely by the legislatures of the respective states, and may be changed, enlarged or curtailed from time to time.   6 Lawson's Rights, Rem. & Prac., sec. 3111; United States v. Fox, 94 U. S. S. C. 315; Cope v. Cope, 137 U. S. 682.   (4)   Homestead rights, if any, of Mary Ann Lee must have been pleaded and proved.   (5) The partition suit filed in 1891 was not binding on any of the parties for the reason that all the parties in interest, and who owned the land, were not made parties thereto.   Hence, it bound no one.   Dameron v. Jameson, 71 Mo. 97; Lilly v. Menke, 126 Mo. 215; Estes v. Nell, 108 Mo. 172.   (6) Defendants not having raised the question of homestead or adverse possession in the court below, they can not now change the theory of their defense.   They must try it in this court on the same theory as it was tried below.   Horgan v. Brady, 155 Mo. 659; Brokerage Co. v. Bagnell, 8 Mo. App. 565; affirmed, 76 Mo. 554; Helling v. United Order of Honor, 29 Mo. App. 309; Claflin v. Sylvester, 99 Mo. 276.

VALLIANT, J.—This is a statutory partition proceeding.   Plaintiffs claim to be children and heirs of Handy Lee, two of defendants are his widow and child, and the other two

are Chaney Lee, who is the owner of an undivided half of the land, and Robert E. Lee, her husband. The real contest is between the plaintiffs on the one side, who claim to be children of Handy Lee, deceased, and his widow Mary Ann, and Andrew Lee, her child, on the other side.

The principal facts are contained in an agreed statement from which it appears: That Handy Lee, Margaret and Mary Ann were negro slaves from birth, owned by a resident of this State, and have always resided here. In 1846 Handy Lee and Margaret, with the consent of their master, were married, and lived together as man and wife until 1856; of that union, the plaintiffs, Peter and Rachel, were the offspring, born, 1850 and 1852. In 1856 Handy, with his master's consent, separated from his wife Margaret, and married the defendant Mary Ann; the defendant Andrew Lee is the result of the second marriage, born in 1861. In August, 1865, after they were emancipated, Handy Lee and Mary Ann Lee were married in due form, and they lived together as husband and wife until the death of Handy in 1887. At the time of his death Handy Lee and Chaney Lee owned the land described in the petition, but they had some time before made a parol partition of it between themselves, whereby the north half was alloted to Handy and the south half to Chaney, and they both acted on that partition up to Handy's death. In addition to the agreed statement, defendants introduced in evidence over plaintiffs' objection, the records of the court in another suit showing, that in 1891, Mary Ann and her son and the plaintiff Peter united as plaintiffs in a partition suit against Chaney and her husband, the result of which was that the south half of the land was set off to Chaney, and the north half to Mary Ann for life as a homestead, and at her death to go to Peter and Andrew, each an undivided half, in fee. But Rachel was left out of that suit, and the proceed-

ing did not dispose of her interest. Now in the suit at bar, Peter and Rachel are plaintiffs, and seek a new partition. The court by its decree in this case allotted the south half to Chaney, and the north half to the widow and heirs of Handy, that is, one-third for life to the widow, as her dower, and one-third in fee to each of the heirs, Peter, Rachel and Andrew, subject to the widow's dower; and finding that the north half was not susceptible of partition in kind among the parties interested without prejudice, ordered that it be sold for partition and the proceeds divided according to their interests so adjudged. From the decree the defendants appeal.

No complaint is made by the appellants of the allotment to Chaney, but they say that the plaintiffs, being the children of a marriage of slaves, are illegitimate and inherit no interest in the land.

I. There is an interesting and learned discussion in the briefs of counsel on the question of the legitimacy of marriage between slaves. The earlier decisions on this subject vary according to conditions. In Massachusetts, slave marriages were deemed valid, but the subject was regulated by statute. [Oliver v. Sale (Mass.) Quincy R. 29, and note.] In New York, also, such marriages were held valid by virtue of a statute. [Marbletown v. Kingston, 20 Johns. 1.] In the States where slavery more recently existed, the decisions are not uniform. Some of them hold that the subject is to be governed by the rules of the common law in reference to marriage generally, and that as marriage by the common law was a civil contract and required the consent of parties capable of contracting, and as the slave did not have that capacity, his marriage was void. The writer of this opinion, speaking for himself alone, deems that a very narrow view of the subject. The common law is never so rigid as to require the same rules to be applied to all conditions regardless of reason and jus-

Lee v. Lee.

tice.  Marriage is a contract, but it is something more; it is a relation, and upon that relation is founded the moral strength and well-being of mankind.  The slave had no property that he could transmit by inheritance to the offspring by his marriage, but he could give to his children that status that comes from having been born of parents who, as far as their condition allowed, assumed the relation of husband and wife.  It is said he could not consent, therefore he could not contract. His condition of slavery subjected him to the will of his master, who except as the law of the land otherwise required, was both lawmaker and judge for him; and what he lacked of civil rights the master had for him; so, though he might lack the technical power to consent, yet when his master gave his consent it supplied what he lacked.  Those marriages of slaves were often solemnized in the presence of the master and by the same priest or minister who officiated at such ceremonies in the master's family.  And that relation was not infrequently observed by them as sacredly as by those in more fortunate condition.  It seems to the writer that it would be degrading to our law to say that it could recognize no distinction between such a marriage and concubinage.  This is the view taken of the subject by the courts of Louisiana and Tennessee. [Girod v. Wells, 6 Martin, 559; Pierre v. Fontenette, 25 La. An. 617; Brown v. Cheatham, 91 Tenn. 97.]

But it is unnecessary to decide that question in this case; because, whether the marriage of the plaintiffs' parents was technically legal or not, their right to inherit from their father is definitely conferred by statute.  Section 2920, Revised Statutes 1899, which is a part of the chapter on descents and distributions, is:  "For the purposes of this chapter, the children of all persons who were slaves, and were living together in good faith as man and wife at the time of the birth of such children, shall be deemed and taken to be legitimate children

of such parents," etc.   That has been the law of this State since February 8, 1865.   The argument for appellants is made that that statute is unavailing because it applies to those who were living together "in good faith" as man and wife, and that good faith implies ability to contract, which a slave did not have.   Such a construction would render the statute self-contradictory.   Good faith has a broader meaning.

Under that statute the plaintiffs Peter and Rachel inherited as legitimate children from their father.

II.   Appellant Mary Ann insists that she ought to have a homestead set off to her in the land, or rather to have the whole of that part of the land that is to be set off to Handy's heirs assigned to her as a homestead.   This claim she bases on the decree rendered in the other partition suit, in which Rachel was not a party.   But there is no claim of that kind set up in her answer.   The decree in that suit is pleaded in the answer as establishing the right of Chaney Lee to the south half of the land, but no other claim is made under it.   There is no claim in the answer for a homestead, and no proof on which it could be assigned to her.

III.   There is nothing in the point that plaintiffs should have first established their title by a suit in ejectment.   They could not have maintained ejectment against the widow who was lawfully in possession.   The agreed statement of facts left nothing for the court to try except a question of law, and the court took the correct view of that question.

The judgment of the circuit court is affirmed.

All concur, except *Marshall, J.,* absent.