Keen v. Keen.

---

SOPHRONIA KEEN v. ELLIS KEEN, Appellant.

Division One, November 23, 1904.

1. **PRACTICE: Law Case: Tried By Court.** In an action at law, tried by the court by consent without the aid of a jury, where no instructions are asked or given, the finding of facts made by the judge is conclusive, and the only question which can be considered on appeal is, did the facts found warrant the conclusions of law reached by the trial court?

2. **MARRIAGE: a Civil Contract.** Under the laws of this State marriage has always been considered "a civil contract, to which the consent of parties capable in law of contracting is essential."

3. ———: ———: **By Negro Woman.** Between 1850 and the emancipation of slaves, a negro woman was incapable of making any kind of civil contract, and hence during that time she could not be a party to a common law marriage. And by statute any marriage between her and a white man was void.

4. ———: ———: ———: **After Emancipation: Presumption.** The court will not presume, from a continuation after emancipation of a relation of cohabitation or any other relation, begun by a white man and a negro woman, his slave, that a common law marriage existed between them after her emancipation, for by law a marriage between white persons and negroes was then and ever since has been illegal and void, and, therefore, no one will be presumed to have attempted to enter into an illegal or void marriage.

5. ———: **Common Law Marriage: Continuance.** To warrant the existence of a common law marriage between the contracting parties, the relation of husband and wife should continue for their joint lives. Neither one nor both could rescind the contract or destroy the relation. And where a white man in 1850 brought a negro woman, his slave, to his house, and they slept in the same bed, ate with their children at the same table, and he in his house called her his wife, etc., and this relation continued till 1883, when they ceased to live together, and the relation terminated, and was never afterwards renewed before her death in 1896, and he in 1883 married by formal ceremony another woman and lived with her as his wife until his death in 1901, the relation was not so continued as to warrant a finding that there was a common law marriage, even if such marriage between them were not by law illegal and void.

6. ———: **Between White and Negro: Inheritance By Children.** Where there was never any kind of a marriage between a white man and a negro woman, either ceremonial, statutory or common law, the children resulting from their cohabitation are not legitimate under the statute which says that "the issue of all marriages decreed null and void in law or dissolved by divorce shall be legitimate," and are not capable of inheriting from him.

Appeal from St. Charles Circuit Court.—*Hon. E. M. Hughes,* Judge.

AFFIRMED.

*D. P. Dyer* and *T. F. McDearmon* for appellant.

(1) Section 2918, Revised Statutes 1899, was not enacted for the purpose of legalizing void marriages, but for the purpose, plainly expressed, of making legitimate the children or issue of illegal or void marriages. But for this it could serve no purpose, for the obvious

reason that the issue of legal marriages, whether cere-
monial, under the statute, or at common law, are, by
virtue of the statute of descents and distributions, legiti-
mate and inherit as of course from their parents. The
above statute is an enabling or remedial one, enacted
for broad, humanitarian purposes, and should be and is
liberally construed. Green v. Green, 126 Mo. 17; Gates
v. Seibert, 157 Mo. 254; Lincecum v. Lincecum, 3 Mo.
441; Johnson v. Johnson, Admr., 30 Mo. 72; Buchanan
v. Harvey, 35 Mo. 276; Dyer v. Brannock, 66 Mo. 391;
Marshall v. Railroad, 120 Mo. 277. (2) A void mar-
riage is equivalent to no marriage in the strict legal
sense. The purpose and effect of section 2918 is to
legitimate the issue of parents, begotten outside the re-
lation of lawful wedlock. The defense in this case
could not be successfully assailed, if it were granted
that the relation between Eli Keen and Phoebe Keen
was unlawful and the defendant was the issue of such
unlawful relationship. Lee v. Lee, 161 Mo. 52; Green
v. Green, 126 Mo. 17; Gates v. Seibert, 157 Mo. 254;
Lincecum v. Lincecum, 3 Mo. 441; Johnson v. Johnson,
30 Mo. 72; Buchanan v. Harvey, 35 Mo. 276; Dyer v.
Brannock, 66 Mo. 391; Boyce v. Dively, 58 Mo. 510. (3)
Marriage is a civil contract at common law and under
our statute. R. S. 1899, sec. 4311; Dyer v. Brannock, 66
Mo. 391; Cargile v. Wood, 63 Mo. 501; Ashford v. Ins.
Co., 80 Mo. App. 638. No formality or ceremony is nec-
essary to consummate a legal marriage contract; only
the consent of parties with legal capacity to contract is
needed. If it were necessary for the defense to show
a valid marriage contract at common law, or under the
statute, which we deny, the testimony in this case amply
sustains a valid marriage contract between Eli Keen
and Phoebe Keen, at common law. Even if it be con-
ceded that Phoebe Keen, at the time the cohabitation be-
gan between her and Eli Keen in 1850 or 1851, was, on
account of the fact that she was a negro woman and a
slave, incompetent to contract, yet the State Constitu-

tion abolished slavery on the fourth of July, 1865, and
thus removed the disability, if any.   It may be said,
admitting this to be true, that the statute of this State
interposes its prohibition against the marriage contract
or relation between a white man and negro woman.
Granted that the statute does prohibit such marriage.
It also prohibits marriages between parents and child-
ren, including grandparents and grandchildren, of
every degree, between brothers and sisters of the half,
as well as of the whole blood, and between uncles and
nieces, aunts and nephews, first cousins as well as white
persons and negroes, and declares all such marriages
absolutely void.   Section 4313 of same statute declares
all marriages, when either of the parties has a former
wife or husband and living, void, unless the former mar-
riage shall have been dissolved.   Notwithstanding such
marriages are by statute declared void, and therefore
no marriage *ab initio,* yet clearly under section 2918,
Revised Statutes 1899, and the decisions of this court,
the issue of any such forbidden or void marriage would
be legitimate and capable of inheriting from their par-
ents.   Green v. Green, 126 Mo. 17.   (4)   Assuming,
for the sake of argument, but by no means conceding
such to be the law, that capacity to contract a legal mar-
riage is necessary to constitute a *de facto* marriage,
which is all that is required in this case to sustain the
title of the defendant, the cohabitation of defendant's
father as man and wife manumitted her and gave her
that capacity.   Any act inconsistent with slavery manu-
mits the slave, such as a devise of property to the slave
by the owner.   5 Har. & John (Md.) 190; Gullemette v.
Harper, 4 Rich. (S. C.) 186.   Or suing a slave for debt.
Outfield v. Waring, 14 John. (N. Y.) 188.   Or consent
by the owner that the slave marry a free woman.
Reeves' Domestic Relations (3 Ed.), 341; (4 Ed.), 419.
The only limitation on the right to emancipate under
the laws of Missouri (R. S. 1855, p. 1478), was that it
should be by deed or will, etc., and when the facts

showed a manumission by implication a deed to that effect was presumed. The facts in this case justify such a presumption. Durham v. Durham, 26 Mo. 507; Lewis v. Hart, 33 Mo. 535. But if there had been no manumission by implication previously, the Constitution which abolished slavery in this State took effect July 4, 1865, and Phoebe Keen thereby became capable of contracting a valid marriage at common law, and the continuation of a *de facto* marriage previously contracted was thereby validated, and the issue of such *de facto* marriage, previously illegitimate, thereby became legitimate. R. S. 1899, secs. 2916, 2917 and 2918. Johnson v. Johnson, 45 Mo. 595; Smith v. Smith, 1 Tex. 621; Gerod v. Lewis, 7 Martin 559; Bishop on Marriage and Divorce (New Commentaries), sec. 665; State v. Cooper, 103 Mo. 266; State v. Bittick, 103 Mo. 183.

*Jno. F. McGinnis* and *C. W. Wilson* for respondent.

(1) It is agreed by all concerned that there could be no lawful marriage, in this State, between Eli Keen, a white man, and Phoebe, a negro woman. Such marriages have been prohibited by express statute and pronounced void or absolutely void for seventy or eighty years. G. S. 1835, p. 407, sec. 3; R. S. 1899, sec. 4312. (2) There is no claim or pretense that Eli Keen and the negro woman were ever married in form of the statute. There was no ceremonial marriage by a minister of the gospel or an officer of the law. The sole claim of the defendant is, that there was a common law marriage between Eli Keen and Phoebe. But the evidence utterly fails to show that there ever existed any common law marriage. (3) There was not one scintilla of evidence produced before the court to show that there was ever any marriage contract or agreement of any kind entered into by Eli Keen, the white man, and Phoebe, the negro woman. The agreement or contract between the parties, competent to contract, is essential to con-

stitute a common law or any kind of marriage.   State v.
Cooper, 103 Mo. 274; State v. Bittick, 103 Mo. 191; Post
v. Post, 70 Ill. 487; Bank v. Galbraith, 149 Mo. 536; Mc-
Kenna v. McKenna, 180 Ill. 577; Robinson v. Robinson,
188 Ill. 371; Rundle v. Pegram, 49 Miss. 751; R. S. 1899,
sec. 4311.   (4)   There was no direct testimony at all
that Eli Keen and the negro woman, Phoebe, entered
into any marriage agreement or contract, at any time
during their cohabitation.   But, to the contrary, all the
evidence points strongly, almost conclusively, to the fact
that there was no marriage contract or agreement, and
that the relations between these parties began without
sanction of marriage.   For these facts are clear and un-
disputed:   (a)   Eli Keen was a white man, not quite 21
years old, who owned his farm and seems to have been
living to himself.   (b)   Phoebe was a negro woman and
a slave, having a child, Martha, three or four years old,
of which Eli Keen was not the father.   (c)   At an ad-
ministrator's sale, which occurred June 1, 1850, the
negro woman, Phoebe, and her child, Martha, were put
up for sale at public auction, and Eli Keen purchased
them and they thereby became his slaves. (d)   Eli Keen
took these slaves to his home and thereafter the rela-
tions with his negro woman, Phoebe, began.   Every
known fact and every surrounding circumstance repels
the idea of any marriage in fact between these parties.
1.   The fact that Keen was a white man and Phoebe a
negro, which they knew, rendered a lawful marriage be-
tween them in this State impossible.   G. S. 1845, p. 723,
sec. 3; G. S. 1855, p. 1061, sec. 3.   2.   The fact that
marriage between a white and negro was highly crimi-
nal.   R. S. 1899, sec. 2174.   With some slight modifica-
tion such has been the law for the last sixty or seventy
years.   3.   The fact that at the time the cohabitation
between these parties began the negro woman, Phoebe,
was a slave and incapable of contracting.   Whereas, by
statute, it was declared that "marriage is considered in
law a civil contract, to which the consent of the parties

capable in law of contracting is essential.'' G. S. 1845, p. 729, sec. 1; R. S. 1855, p. 1061, sec. 1. It is the accepted doctrine, wherever African slavery prevailed, that the slave was incapable of contracting. Hall v. United States, 97 U. S. 30; Malinda & Sarah v. Gardner, 24 Ala. 723; Howard v. Howard, 6 Jones (N. C.) Law 235; Johnson v. Johnson, 45 Mo. 595; *Consensus non concubitas facit matrimonium.* There can be no such thing as a marriage in fact without the consent of the parties capable in law of contracting. (5) There being a total absence of any direct or affirmative proof of a marriage contract or agreement or of an actual marriage in fact between Eli Keen, a white man, and Phoebe, the negro woman, the evidence was wholly insufficient to raise a presumption of marriage in fact between them. For, in order to raise a presumption of marriage in fact (in the absence of direct and positive proof of the fact), three things must be made to clearly appear, namely: (a) Cohabitation as man and wife; (b) public acknowledgment of the relation by the parties; and (c) the cohabitation and acknowledgment must be of such a character as to establish the reputation in the community that the parties are in fact married. No inference of marriage in fact can arise in any case, in the absence of these three essential elements. Cargile v. Wood, 63 Mo. 513; Adair v. Mette, 156 Mo. 512; Banks v. Galbraith, 149 Mo. 537; Ashford v. Ins. Co., 80 Mo. App. 644. (d) Cohabitation and acknowledgment, however long continued, is not alone sufficient to justify an inference of marriage in fact. Cargile v. Wood, 63 Mo. 513; Eldred v. Eldred, 97 Va. 606. (e) Reputation alone will not justify such inference. Cargile v. Wood, 63 Mo. 513; Ashford v. Ins. Co., 80 Mo. App. 644. (f) The testimony was that the reputation in the community was that Keen and Phoebe were cohabiting without sanction of marriage. And such was the finding of the trial court. It is absurd to suppose that reputation of marriage would arise in the commu-

nity from the fact of cohabitation and acknowledgment between these parties, when it was a matter of public notoriety in the community that they could not be married. (6) (a) But cohabitation, acknowledgment and reputation in no case constitute marriage in fact. These at best but constitute evidence from which, in a proper case, marriage in fact may be inferred. They but constitute presumptive evidence or proof of marriage, not marriage itself. Cargile v. Wood, 63 Mo. 512; Adair v. Mette, 156 Mo. 512; State v. St. John, 94 Mo. App. 233. (b) But where, as in the case of Eli Keen, a white man, and Phoebe, a negro woman, the facts plainly appear that no legal marriage was possible, there can be no inference of marriage in fact, upon mere proof of cohabitation, acknowledgment and reputation. (c) To presume or infer actual marriage between persons whom the law says can not intermarry, to presume or infer a void marriage, is a patent, bald absurdity on its face. (7) But again, it has been held by this court that in order to constitute "marriage in fact" it is essential that the parties should have entered into a mutual contract, by which they assumed to each other the relation of husband and wife, and that this relation was to continue so long as they should both live, and upon the understanding that neither one nor both could rescind that contract or destroy that relation. State v. Cooper, 103 Mo. 274. Any contract that did not embrace all of these elements would be a contract for the purposes of concubinage and not of marriage.

MARSHALL, J.—This is an action in ejectment to recover an undivided one-half of seventy-one and sixty-seven hundredths acres of land, being a part of United States survey No. 1765, in St. Charles county, Missouri. The petition is in the usual form and the ouster is laid as of March 2, 1901. The answer is a general denial.

Eli Keen is the common source of title. The plain-

tiff claims one-half of the land, subject to the payment of debts, under section 2939, Revised Statutes 1899, on the ground that she is the widow of Eli Keen, and that he died without any child or other descendants in being, capable of inheriting. The defendant clams to be the legitimate child of an alleged common law marriage between Eli Keen, a white man, and Phoebe, a negro woman.

There was a judgment below for the plaintiff and the defendant appealed. At the request of the parties the circuit court made a special finding of facts, together with conclusions of law, separately stated, which it is agreed is a fair statement of the facts, except that the defendant says that while the court found that Eli Keen and Phoebe lived together and cohabited without the sanction of marriage, and that the reputation was that they had never been married, it should have said they were never married "by ceremony," but as hereafter shown the finding of the court covers both a ceremonial and a common law marriage, and the addition of the words "by ceremony" would materially narrow the finding of the court, and would beg the very question involved in this case. For there is no pretense that there was any ceremonial marriage, and the only question is, was there a common law marriage? The addition of the words "by ceremony" would, therefore, leave the question of common law marriage an undecided question in the case, and it is plain that such a marriage was intended to be decided by the court as well as a ceremonial marriage.

This is an action at law, and, by consent, was tried by the court without the aid of a jury. There is abundant testimony to support the finding of facts by the court, and, therefore, that finding of fact is conclusive upon the parties in this court. No instructions were asked or given, and the only question here, therefore, is, did the facts found warrant the conclusions of law reached by the trial court?

The finding of fact is as follows:

"Eli Keen was a white man, and about 1847 or 1848, being then under twenty-one years of age, removed to St. Charles county, Missouri, with his father, and settled in this country about that time. The woman, Phoebe, was a negro woman, and with a child, Martha, was held and owned as a slave by the father of Eli Keen.

"On June 1, 1850 or 1851, at the administrator's sale of his father's personal estate and slaves, Eli Keen became the purchaser of the negro woman, Phoebe, and her child, Martha, and thereby became the owner of them and held them as slaves. Sometime after he became the owner of Phoebe, the negro woman, about 1850 or 1851, Eli Keen began cohabiting with her and continued cohabiting with her down to about 1882 or 1883. As the fruits of their intercourse, eight children were born, who are now living, the defendant Ellis Keen being the first born, and now in the fifty-first year of his age. Of these children, six were born prior to the general emancipation of slaves in this State in 1865, and two were born after that date, the youngest being born January 2, 1868.

"Eli Keen owned his own farm and home place in St. Charles county, and from the time he began cohabiting with Phoebe, the negro woman, in 1850 or 1851, he lived in his own home, on his own farm, and Phoebe lived in the same house with him and did the housekeeping. They occupied the same room and the same bed. They ate at the same table, and as the children were born they ate at the same table with Eli Keen and Phoebe, Eli Keen sitting at one end of the table and Phoebe at the other. The children called Eli Keen 'pa' and Phoebe 'ma' and this was done in the presence of Eli Keen and Phoebe without protest or objection from either of them. Eli Keen called the woman Phoebe and she

called him Eli. Eli Keen and Phoebe and the children born of their relations lived together as one family. They cared and provided for them (the children) and treated them like parents ordinarily treat their legitimate children. After the close of the war of rebellion a public district school for the education of negro children was organized under the laws of Missouri, and a public school building was erected for this purpose within a few hundred yards of Eli Keen's residence, the site for such building being given by Eli Keen on his home farm. Eli Keen and Phoebe sent their children to this school and for two terms after this school started, Eli Keen and other patrons, at the expiration of the four months' term of the public school, employed the teacher and extended the term two months longer. Several of the older children, the defendant among them, were sent off to school in Iowa and Tennessee, Eli Keen paying all the expenses.

"Phoebe and the children were in the habit of dealing with the merchants in St. Charles and bought goods which were charged to Eli Keen, and Eli Keen paid the bills. A physician was called to visit the children when sick, which he charged to Eli Keen and Eli Keen paid the bills. Eli Keen at his own house introduced Phoebe to several different persons as his wife. To several persons, after his marriage to the plaintiff, Sophronia K. Keen, Eli Keen spoke of Phoebe Keen as his wife. So far as the evidence showed, Eli Keen was never seen out with Phoebe except when in his own house or yard. He was never seen off of the place with her. He was never known to visit friends with her. He was never known to introduce her to anybody as his wife outside of his own home, and he was never known to be with her and acknowledge her as his wife outside of his own house.

"While it was a known fact in the community in which they lived that Eli Keen and Phoebe were living together and cohabiting and raising a family of children

as above detailed, it was the reputation in the community that they were so living together and cohabiting without the sanction of marriage. The reputation was that they had never been married.

"As the children grew up the evidence shows that Eli Keen put the sons, Ellis, Reason, Mathew and Mark on tracts of land owned by him and allowed them to occupy and use the same without charging them any rent. That he advised and consulted with them about the management of their affairs. That in his last will and testament executed September 5, 1900, he devised his entire estate to these children born of the relations between him and Phoebe, except the provision therein made for his wife, Sophronia K. Keen, the plaintiff, and in his will he designates and mentions them as his 'beloved children.' That in his will be devised the tract of land upon which the defendant now lives, and which is in controversy in this suit, to Ellis Keen, the defendant. That by his father's permission he had been living on this land since 1892, his father, Eli Keen, charging him no rent for the same. That the other sons, Reason, Mathew and Mark, were at and before Eli Keen's death, living on the farms that were respectively devised to them in the will, and they are still living on such farms.

"By deed dated November 22, 1883, and recorded December, 1883, Eli Keen conveys his old home farm in St. Charles county, the place where he and Phoebe lived for so many years, to Phoebe, designating her as 'Phoebe Keen,' she to have and to hold for and during her natural life, and providing therein that upon the death of Phoebe and of himself, Eli Keen, the title to said farm should vest in Lettie Ann Skinner, Phoebe Wise, Mary Phillips, and Alice Cora Brown, the daughters of said Phoebe Keen. In this deed Eli Keen expressly reserves to himself 'the use of one room in the house, which he designated in the deed as the room now occupied.and used by him. In this deed Eli Keen

does not describe or designate Phoebe as his wife, nor does he mention or designate these daughters of Phoebe as his children.

"About 1882 or 1883, the exact date does not accurately appear from the testimony, the intercourse between Eli Keen and Phoebe Keen ceased. She remained in this home farm for several years, and then moved to St. Charles, Missouri, where she lived to the date of her death in 1896. About 1883 Phoebe ceased to buy goods at the stores on Eli Keen's credit. Her bills were thereafter charged to Phoebe Keen and she paid them.

"On August 22, 1883, Eli Keen was married to the plaintiff, Sophronia K. Keen (nee Barrett), in Wood county, West Virginia, upon license issued in accordance with the laws of West Virginia. The ceremony was performed by a minister of the gospel of the Methodist Episcopal Church South, and from the date of their marriage, down to the date of Eli Keen's death, on February 22, 1901, they have lived together as husband and wife. Prior to their marriage Eli Keen informed the plaintiff that he was an unmarried man, and had no children or other persons dependent upon him. The plaintiff had no knowledge or information whatever of Eli Keen's relations with the negro woman, Phoebe, until a number of years after her marriage with him, and in fact received no definite information concerning these relations between Eli Keen and Phoebe, until very shortly before Eli Keen's death, namely in December, 1900.

"Eli Keen left no child or children or other descendants in being other than the defendant Ellis Keen and his brothers and sisters, the children of the relations with Phoebe, the negro woman.

"The plaintiff in due form of law filed her renunciation of the last will and testament of Eli Keen, her husband, on April 1, 1901, declining to accept the provisions made for her in said will.

"On April 1, 1901, by her election in writing executed, acknowledged, filed and recorded according to law, plaintiff elected to take one-half of her husband's estate, subject to the payment of his debts under the provisions of section 2939, Revised Statutes 1899.

"The tract of land described in the petition was owned by Eli Keen at the time of his death. The defendant is in possession thereof. It is all in cultivation and the rental value thereof is four dollars per acre per annum. Eli Keen told other parties that he had never been married until he married the plaintiff in 1883. There was no evidence of any kind of any marriage contract or agreement between Eli Keen and the negro woman, Phoebe, other than is set forth in the above statement. The course of living between them continued and remained the same from the beginning of their cohabitation in 1850 or 1851 down to their final separation and the cessation of their intercourse in 1882 or 1883. In the deed made by Eli Keen to Phoebe in November, 1883, conveying to her the old home place, above-mentioned, although made after Eli Keen's marriage to plaintiff, the plaintiff did not join."

"CONCLUSIONS OF LAW.

"My conclusions of law from the above facts are that no marriage at common law ever existed between Eli Keen and Phoebe Keen, and that Eli Keen died without any child or children, or other descendants in being capable of inheriting from him, and that plaintiff is entitled to recover possession of one undivided half of the lands described in petition. Damages are assessed at the sum of one hundred and fifty-six dollars. Monthly rents and profits are assessed at the sum of $11.94."

I.

*Marriage.*

At the time Eli Keen and Phoebe began living together and cohabiting in 1850 or 1851, the law of this

State was that: • "Marriage is considered in law as a civil contract, to which the consent of the parties capable in law of contracting is essential." [R. S. 1845, ch. 115, sec. 1.] Eli Keen was a white man, and Phoebe was a negro, and the law of this State at that time further provided: "All marriages of white persons with negroes or mulattoes are declared to be illegal and void." [R. S. 1845, ch. 115, sec. 3.]

These provisions were carried without .change into the revision of 1855. [R. S. 1855, ch. 108, secs. 1 and 3.] Section one aforesaid was carried unchanged into the revision of 1865. [G. S. 1865, ch. 113, sec. 1.] And section three was consolidated with section two of the prior revisions so as to make it read: "All marriages between parents and children, including grandparents and grandchildren of every degree, between brothers and sisters of the half as well as of the whole blood, and between uncles and nieces, aunts and nephews, *white persons and negroes,* are prohibited and declared absolutely void; and this prohibition shall apply to illegitimate as well as legitimate children and relatives." [G. S. 1865, ch. 113, sec. 2.]

Section 1 aforesaid has been carried into all the subsequent revisions and is now the law in this State. [R. S. 1879, ch. 50, sec. 3264; R. S. 1889, ch. 108, sec. 6840; R. S. 1899, ch. 50, sec. 4311.]

Sections 2 and 3 as thus consolidated were carried without change into the revision of 1879. [R. S. 1879, ch. 50, sec. 3265.] By the revision of 1889 said consolidated section was amended so as to insert between the words "aunts and nephews," and the words "white persons and negroes," the words *"first cousins."* And the section as so amended was carried into the revision of 1899 (R. S. 1899, ch. 50, sec. 4312) and is the law now.

Thus it appears that, under the laws of this State, marriage has always been considered "as a civil con-

tract, to which the consent of parties capable in law of contracting is essential.''

The courts of this State in dealing with common law marriages have always held that ''marriage is a civil contract, to which the consent of parties capable in law of contracting is essential.'' [State v. Bittick, 103 Mo. l. c. 191; State v. Cooper, 103 Mo. l. c. 273; Banks v. Galbraith, 149 Mo. 529.]

There is no pretense in this case that there was any ceremonial or statutory marriage between Eli and Phoebe and as he was a white man and she was a negro, there could never have been a legal ceremonial or statutory marriage between them. From the time their relations began in 1850 or 1851, until the emancipation of slaves, Phoebe was incompetent to make any kind of a civil contract, and if she had during that time attempted to enter into a common law marriage it would be void, and she could have repudiated it after she became free. [Johnson v. Johnson, 45 Mo. 595.]

When Eli and Phoebe began their relation to each other and until 1865 it was not possible or legal for them to have entered into the civil contract of marriage, because she was not competent to contract, and because any such thing as a marriage between them was then and is now illegal and void. In addition to this the trial court found the fact to be that there never was any common law marriage entered into between them.

It is argued, however, that although she was not capable of contracting marriage prior to 1865, nevertheless at that time she became capable in law of doing so, and that as she continued the relations with Eli after that time and until 1882 or 1883, a common law marriage must be presumed. There are several very potent reasons that would deter any court from indulging in any such presumption, to-wit: First, the law made such a marriage illegal and void (and since 1879 such a marriage has been a crime that might be punished as a felony or a misdemeanor. R. S. 1879, ch. 24,

sec. 1540; R. S. 1889, ch. 47, art. 8, sec. 3797; R. S. 1899, ch. 15, art. 8, sec. 2174), and therefore no one will be presumed to have entered into or attempted to enter into, an illegal and void marriage; second, the trial court found the fact to be that there never was any such common law marriage entered into after or before 1865; third, there was no change in their manner of living together after 1865; and, fourth, the conduct of Eli and Phoebe after 1865 shows that they never had entered into any common law marriage at any time. For instance, in 1882 or 1883 they ceased to live together, their relations terminated. She remained on his farm for several years after that and then moved into St. Charles, where she lived up to the time of her death in 1896, and he went to West Virginia and on August 22, 1883, he married the plaintiff herein and continued to live with her until his death in February, 1901.

In view of these facts no court would indulge a presumption of a common law marriage, for one of the things that must appear to warrant the existence of a common law marriage is that the contract between the contracting parties was that the relation of husband and wife should continue for their joint lives and that neither one, nor both, could rescind the contract or destroy the relation. [State v. Cooper, 103 Mo. l. c. 273; Banks v. Galbraith, 149 Mo. l. c. 536.] The conduct of the parties is a conclusive demonstration that Eli and Phoebe never entered into a common law marriage.

The defendant, however, contends that the case of Lee v. Lee, 161 Mo. 52, is decisive of this case, because, it is said, while Phoebe was incapable of making or entering into a contract of marriage prior to 1865, still as Eli was her master, his consent could supply her want of capacity to contract, and that the effect of his marriage to her was to manumit her. Lee v. Lee, supra, was, however, essentially different from the case at bar. The facts in that case were that a marriage before

the war between two slaves, with the consent of a master, had been entered into, and afterwards dissolved with his consent, and another marriage entered into by the man with another slave, with the consent of the master, and a marriage ceremony performed between the latter after their emancipation, and after the man's death a suit in partition was begun between the children of the first marriage and the widow of the second marriage and her children, and the question was whether the children of the first marriage were entitled to inherit from the man. It was expressly said that it was not necessary to decide whether the first marriage was legal or not, because by section 2920, Revised Statutes 1899, it was provided that "the children of all persons who were slaves, and were living together in good faith as man and wife at the time of the birth of such children, shall be deemed and taken to be legitimate children of such parents," and upon this statute the decision was rested.

No such case is here presented, and hence that decision affords no support for the contention in this case.

The result is that there never was any kind of a marriage between Eli and Phoebe—either ceremonial, statutory, or common law.

## II.

The defendant contends, however, that as section 2918, Revised Statutes 1899, provides that "the issue of all marriages decreed null in law, or dissolved by divorce, shall be legitimate," the defendant is a legitimate child of Eli Keen, and capable of inheriting from him; and further contends that this section was not intended to legalize void marriages, but to make the children of illegal or void marriages legal. And incidentally it is urged, that in Green v. Green, 126 Mo. 17, it was held that children of a marriage entered into in good faith by a woman, with a man who had a wife at the time, were legitimate, and hence, it is claimed that as marriages, where either party has a former wife or hus-

band living, are declared to be void (R. S. 1899, sec. 4313), and as the marriage between parents and children, grandparents and grandchildren, brothers and sisters, uncles and aunts, nephews and nieces, and between first cousins, are prohibited and declared by the same section of the statutes to be void that prohibits marriages between whites and negroes and declares such marriages to be void, therefore, the children of a marriage between a white person and a negro, are as much legitimate under section 2918, supra, as the children of any of the other marriages so prohibited or declared void.

The logic employed and the conclusion reached might be conceded, but it would avail defendant nothing in this case, for the simple reason that there was no marriage of any kind between Eli and Phoebe and therefore the statute relied on (sec. 2918, R. S. 1899) can have no application here.

This case is different from the case of Green v. Green, supra, in this, that in that case Green "was married in due form," while here there was no marriage of any kind or character shown. Hence the application of the statute (sec. 2918, R. S. 1899), to the children of the Green marriage, and the inapplicability of the statute to the case at bar.

The conclusion follows that the judgment of the circuit court was right, and it is therefore affirmed.

All concur, except *Robinson, J.,* absent.