### PAGE v. RODDIE et al.

No. 11954—Opinion Filed Oct. 2, 1923.

**1. Marriage — Validity — Presumptions.**

The presumption of removal of prior obstacles in support of a marriage does not prevail where it is attacked and evidence introduced on either side, but the question then becomes one of fact to be decided in the light of all the circumstances and the reasonable inferences from them.

**2. Appeal and Error — Questions of Fact — Findings as to Common-Law Marriage.**

In an action where a jury is waived and the cause tried to the court without the intervention of a jury, it is necessary to determine the issue whether a marriage relation was actually entered into by the parties, and whether there was a matrimonial relation maintained between them, and whether they openly assumed mutual duties and obligations towards each other as man and wife, and where there is a conflict in the testimony as to the facts which go to show whether or not the parties in good faith actually assumed and maintained those marital duties and obligations required by the common law, the judgment of the trial court upon such facts is a finding of every special thing necessary to be found to sustain the general judgment and will be given the effect of the verdict of a jury upon conflicting testimony, and if reasonably supported by the evidence, will not be disturbed by the Supreme Court.

**3. Bastards — Legitimating Statute — Applicability.**

The concluding paragraph of section 11303, Compiled Oklahoma Statutes of 1921, which provides that "the issue of all marriages null in law or dissolved by divorce are legitimate," has no application to the issue of parties assuming, in bad faith, matrimonial relations in violation of law.

**4. Indians — Homestead of Deceased Allottee — Rights of Surviving "Issue."**

Under the provisions of section 9 of an act of Congress approved May 27, 1908 (35 Stat. 312), making the homestead of any deceased member of one-half or more Indian blood of the Five Civilized Tribes inalienable until April 26, 1931, for the use and support of the surviving issue of such deceased member born since March 4, 1906, held, that the word "issue" as used in said act means legitimate issue.

(Syllabus by Foster, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Carter County; Thos. W. Champion, Judge.

Action by Rena Billis Page, by her legal guardian, W. C. Wilkins, against Reuben M. Roddie et al., for possession and to quiet the title to certain lands. Judgment for defendants. Plaintiff brings error. Affirmed.

Jordan & Burke, J. M. Willis, and A. M. Works, for plaintiff in error.

Reuben M. Roddie, W. C. Duncan, and Robert J. Wimbish, for defendants in error.

Opinion by FOSTER, C. This action was commenced in the district court of Carter county, Oklahoma, on the 3rd day of July, 1918, by plaintiff in error, Rena Billis Page, by her legal guardian, W. O. Wilkins, plaintiff below, against the defendants in error, Reuben M. Roddie and L. H. Akers, defendants below, to quiet her title to certain lands described in her petition, for possession of a portion of said lands, and for damages for the wrongful detention thereof by the defendants in error. The parties will be hereinafter referred to as they appeared in the court below.

Plaintiff claims the land in controversy constituted the homestead allotment of one Benson Page, a one-half blood Choctaw Indian, duly enrolled as such, opposite Roll No. 13,712, of the Approved Rolls of the Five Civilized Tribes of Indians, and claims the title and right of possession in said lands as the issue of a marriage by Benson Page and Maggie Major, entered into March 7, 1910, according to the provisions of section 9 of an act of Congress, approved May 27, 1908 (35 Stat. 312), which provides that the homestead of any deceased member, of one-half or more Indian blood, of the Five Civilized Tribes shall remain inalienable until April 26, 1931, for the use and support of surviving issue born since March 4, 1906.

The defendants claim title through deeds executed to W. S. Roddie by Libby Page, a former surviving wife, and Alice Anderson, a surviving sister of the deceased allottee, who are alleged to be the only heirs at law of the said Benson Page. By intervening conveyances from W. S. Roddie, L. H. Akers claims title to all of said lands and filed an answer in which he asked that the title be quieted in him.

A jury was waived and on the 17th day of June, 1920, the cause was tried to the court which made a general finding in favor of the defendants upon all the issues involved, quieting the title of the defendants in said lands against the claim of the plaintiff. From the judgment so rendered, the plaintiff appeals to this court and assigns the following errors:

First. The said judgment and decree of the district court of Carter county, state of Oklahoma, is not sustained by sufficient evidence.

Second. The said judgment and decree of the district court of Carter county, state of Oklahoma, is contrary to the evidence and to the law.

Third. Said district court of Carter county, state of Oklahoma, erred in overruling the motion of plaintiff in error for a new trial, to which ruling of the court the plaintiff in error, at the time, duly excepted.

The assignments of error present but one question, namely, whether or not the judgment and decree of the trial court is sustained by the evidence and by the law.

There is a sharp conflict in the evidence upon the question of whether or not the alleged marriage of Benson Page and Maggie Major, in fact, ever took place. Plaintiff in error concedes that there is no evidence in the record to prove a formal or ceremonial marriage between them, but insists there was nevertheless a common-law marriage entered into between them and that it will be presumed in support of such marriage that all legal obstacles had been removed and that the parties were competent to enter into matrimonial relations.

Defendants in error contend on the other hand that there being a conflict in the evidence as to whether or not Benson Page and Maggie Major actually entered into matrimonial relations and the existence of the marriage itself being disputed, the presumption in support of the marriage that the parties were competent to marry and that all legal obstacles had been removed is rebuttable, and the case must be tried not upon the weight and force to be given a legal presumption, but upon the weight and sufficiency of the proofs, and that the general finding of the court in favor of the defendants is a general finding upon all disputed points and that unless such finding is against the clear weight of the evidence, should not be disturbed by this court.

There is clear and uncontradicted evidence in the record that Benson Page had a former wife living at the time of his alleged marriage to Maggie Major. The former wife testified to this marriage as having been entered into in the year 1911, and that she had never obtained a divorce. Corroborating this testimony, a certified copy of a marriage license issued in Johnston county, Okla., to Benson Page and Maggie Goodwin, together with a certificate thereto, was introduced in evidence showing the marriage of these parties in Johnston county on April 16, 1911.

It was further disclosed in the evidence that after this marriage was contracted, the parties lived together until sometime in the year of 1913, when a separation took place, and that after the separation, the wife lived in Coal and Atoka counties, and the husband in Pushmataha county, and that each knew of the whereabouts of the other at all times up until the alleged marriage of Benson Page and Maggie Major. A certificate of the court clerk of Pushmataha county was introduced in evidence showing no record of a divorce to Benson Page in that county.

In the case of Brokeshoulder v. Brokeshoulder, 84 Okla. 249, 204 Pac. 284, the Supreme Court of this state laid down a liberal rule, more liberal perhaps than had found expression in earlier cases in regard to the weight and value of the legal presumption indulged in support of a marriage entered into at a time when one of the spouses had a husband or wife living.

At the first hearing of this case, the Supreme Court laid down the following rule, which we quote from the syllabus:

"The presumption arising in favor of the validity of a second marriage is not a conclusive presumption, but is what is known as a rebuttable presumption, and the one contending against the legality of the second marriage is not required to make plenary proof of a negative averment. It is enough that he introduce such evidence as, in the absence of all counter testimony, will afford reasonable grounds for presuming that the allegation is true, and when it is done the onus probandi will be thrown on his adversary."

Upon rehearing, the court, in an elaborate opinion, reaffirmed this principle in the following language, being the fifth paragraph of the syllabus:

"The presumption of removal of prior obstacles in support of a marriage does not prevail where it is attacked, and evidence introduced on either side, but the question then becomes one of fact, to be decided in the light of all the circumstances and the reasonable inferences from them. Turner v. Williams, 202 Mass. 500, 89 N. E. 110, 24 L. R. A. (N. S.) 1199, 132 Am. St. Rep. 511. Also editor's note, 16 L. R. A. (N. S.) 98, 99."

There is evidence, as disclosed by the record before us, to the effect that no marriage license ever issued to Benson Page or Maggie Major in either Choctaw or Pushmataha county. This evidence is uncontradicted, except the uncorroborated statement of Maggie Major to the effect that she and Benson Page went from Bellzona in Pushmataha county to Hugo, Choctaw county, a distance of some 15 or 20 miles, procured a license from the county clerk and were married,

though she does not remember who it was that performed the ceremony. She further testified that she saw the marriage license.

Counsel, nevertheless, insist that while her testimony standing alone may not be sufficient to establish a ceremonial marriage, yet when taken in connection with other testimony in the case does establish a common-law marriage, and they point out other testimony to show that they cohabited together up until the time the plaintiff was born, and thereafter until the death of Benson Page. In this view of the case, it occurs to us that her testimony proves too much. It surely cannot be accepted as proof of a common-law engagement or contract to enter into matrimonial relations, and in the absence of clear and credible testimony on this point, proof of cohabitation alone would not suffice. 26 Cyc. 837.

Surely, if Benson Page and Maggie Major intended to enter into a common-law relation, it would have been unnecessary for them to go a distance of 15 or 20 miles to execute a contract. Nothing being required other than a mutual agreement to enter into matrimonial relations, it could have been legally effected at home without going to another county.

When the second marriage is attacked, as here, and evidence introduced on both sides in respect of such marriage, the question of removal of prior obstacles in support of the marriage then becomes a question of fact to be decided in the light of all the circumstances and the reasonable inferences to be drawn from them, and whether the trial court in its general finding found from the evidence that the prior marriage had not been dissolved by death or divorce at the time of the second marriage, or whether it found from the evidence that the second marriage was not, in fact, consummated, such finding is a finding of every special thing necessary to be found to sustain the general finding and judgment and is conclusive upon this court upon doubtful and disputed questions. Chenners v. Adams, 46 Okla. 368, 148 Pac. 1023; McCann v. McCann et al., 24 Okla. 264, 103 Pac. 694; Thompson et al. v. Wilkinson et al., 46 Okla. 115, 148 Pac. 177; Anicker v. Watkins et al., 46 Okla. 239, 148 Pac. 725; Roberts v. Mosier et al., 35 Okla. 691, 132 Pac. 678; Deming Inv. Co. v. Love, 31 Okla. 146, 120 Pac. 635; Bothwell v. Way, 44 Okla. 555, 145 Pac. 350.

For the purposes of this case, it is not necessary to determine, and we therefore express no opinion as to whether or not the same presumptions of capacity of the parties to enter into the marriage relation are to be indulged in support of a common-law marriage as are indulged in respect of a ceremonial marriage.

We pass now to the contention of counsel for plaintiff in error that the provisions of section 11303, Compiled Statutes of Oklahoma 1921, operate to make the issue of Benson Page and Maggie Major legitimate, although the marriage itself is void. The concluding sentence of the statute referred to above is as follows:

"The issue of all marriages null in law, or dissolved by divorce, are legitimate."

Counsel cite no case in which the issue of a common-law marriage was declared legitimate where such marriage could be declared void because of the existence of a prior undissolved marriage.

The case of Copeland et al. v. Copeland et al., 73 Oklahoma, 175 Pac. 764, and other Oklahoma cases cited, are cases where the second marriage was solemnized in accordance with the forms of law, or where the second marriage was a duly consummated ceremonial marriage.

This contention is met and overturned, however, by the fact, as above pointed out, that the finding of the trial court under the conflicting evidence before it, involved a finding that the second marriage was not matrimonial, but meretricious; in other words, that no common-law marriage was, in fact, entered into under the evidence introduced, and in these circumstances the statute quoted can have no application. The statute applies where the parties, in good faith, attempt to contract the marriage relation, against which some legal barrier exists, and not to a relation immorally entered into.

It is finally contended that under the provisions of section 9 of the act of Congress, approved May 27, 1908 (35 Stat. 312), the use of the word "issue" contemplates illegitimate as well as legitimate issue. We cannot agree with counsel in this contention.

In 23 Cyc. at page 359, it is said:

"In its legal sense, as used in statutes and wills, and deeds, and other instruments, issue means descendants, lineal descendants; offspring; legitimate offspring."

If it had been the intention to give illegitimate children the right to inherit homestead lands, such as are involved in the instant case, it seems to us that Congress

would have said so in plain terms. There is nothing in the context of the act in question which requires us to deviate from the plain language used therein.

The judgment of the trial court is therefore affirmed.

By the Court: It is so ordered.