## In re ATKINS' ESTATE.

### ATKINS et al. v. RUST, Adm'r, et al.

No. 20749.   Opinion Filed July 7, 1931.

Withdrawn, Corrected and Refiled July 28, 1931.

Rehearing Denied Oct. 13, 1931.

Woodward & Westhafer, Chas. B. Rogers, and W. L. Ransom, for plaintiffs in error.

Newton & Pinson (E. L. Kirby, of counsel), for defendants in error.

CULLISON, J. Plaintiffs in error appeal to this court from the judgment of the district court of Wagoner county, Okla., appointing W. H. Rust as administrator of the estate of Billie Atkins, deceased,—the said W. H. Rust having theretofore been appointed guardian of the person and estate of Nellie Atkins, Ed Atkins, and Legus Atkins.

Parties will be referred to as plaintiffs and defendants in this action, they having appeared as such in the trial court.

Billie Atkins, an elderly full-blood Creek Indian man, married Bertie Miller, a negro woman on July 31, 1920. They secured a license from the court clerk of Tulsa county, Okla., and the marriage was duly solemnized in said county, and thereafter they lived together as husband and wife upon the allotment of Billie Atkins. Three children were born as a result of this union, to wit, Nellie Atkins, Ed Atkins, and Legus Atkins. Bertie Miller died in 1928.

After the death of Bertie Miller, Billie Atkins continued to live upon his allotment with his three children until his death, and following his death the three minor children continued to occupy said homestead as their residence. Billie Atkins died on April 24, 1929, in Wagoner county, Okla., and application was made to the county court of Wagoner county, for letters of administration upon his estate.

Richard Atkins, a half-brother of Billie Atkins, deceased, filed his petition in the coun-

ty court requesting the appointment of S. W. Brown, Jr., as administrator of the estate of Billie Atkins, deceased. Mitchell Wadsworth, nephew of Billie Atkins, deceased, petitioned for the appointment of W. S. Vernon as administrator of the estate of Billie Atkins, deceased. W. H. Rust, as guardian of Nellie Atkins, Ed Atkins, and Legus Atkins, minors, filed his petition for the appointment of himself as such administrator and objected to the other applicants on the grounds that he, as guardian of the minor children, had prior right to the appointment.

The cause was heard by the county court of Wagoner county, Okla., and judgment was rendered in favor of W. H. Rust, guardian, appointing him administrator of the estate of Billie Atkins, deceased, with bond in the amount of $35,000, and against the plaintiffs.

Plaintiffs appealed to the district court of Wagoner county, Okla., where said cause was tried de novo, and the district court found in favor of defendants, and rendered its order affirming the order and judgment of the county court of Wagoner county, Okla., from which order and judgment of the district court plaintiffs appeal to this court.

The sole question to be decided in this appeal is, Who has the prior right to appointment as administrator, and in deciding this question we have to determine whether the three children, born as a result of the attempted marriage of Billie Atkins and Bertie Miller, inherit the estate of Billie Atkins, deceased, or whether said estate goes to his half-brothers and half-sisters and their descendants. Plaintiffs contend that since the attempted marriage between Billie Atkins and Bertie Miller was prohibited by law, then there could be no legal marriage between said parties, and that their cohabiting together and bringing into the world the three children just named would not entitle said children to inherit from their father, Billie Atkins; Billie Atkins having died without issue of his own body, his property would descend to his half-brothers and half-sisters.

The trial judge, who was very familiar with the circumstances surrounding this case, found that the attempted marriage was in good faith, and that under section 11303, C. O. S. 1921, children born to said parties were legitimate and would inherit their father's estate.

The exact question presented in this appeal has never been passed on by our court, as to the rights arising out of a marriage between an Indian and a negro, but the section of our statute under which the same

comes has been construed by this court in cases similar to the instant case.

Section 11303, C. O. S. 1921, is a section of succession or descent of property. Said section provides procedure whereby illegitimate children may be acknowledged so as to inherit the estate of their father. The last part of section 11303, C. O. S. 1921, provides:

"* * * The issue of all marriages null in law, or dissolved by divorce, are legitimate."

This court said in the second paragraph of the syllabus, in the case of Copeland v. Copeland, 73 Okla. 252, 175 Pac. 764:

"Under section 8420, Revised Laws of 1910, which provides: 'The issue of all marriages null in law, or dissolved by divorce, are legitimate,—a child born of a marriage contracted and consummated in accordance with the form of the law, which for any reason (such as one of the parties having a living spouse undivorced) is invalid, is legitimate, and inherits and transmits by descent as though born in lawful wedlock."

And in the body of the opinion, the court discusses this question in detail, and we quote the following from the body of said opinion:

"We have considered all of the evidence carefully, and believe that it amply sustains the contention of the plaintiffs that no divorce had been granted, and hold that the second marriage was void for the reason that at the time said marriage was entered into, Joe Copeland had a living wife, and no divorce had been decreed. This raises the question as to the status of the child born, Elizabeth Copeland, of the second marriage. Revised Laws of 1910, sec. 8420, provides:

"'The issue of all marriages null in law, or dissolved by divorce, are legitimate.'

"This provision of this statute has never been construed by the Supreme Court, its language seems too plain for construction, and, if it means what it says, a child born of a marriage contracted and consummated in accordance with the law, though void on account of the disability of one of the parties, such as having a living spouse undivorced, is legitimate, and, being legitimate, as a natural sequence it would inherit from its parents as though it were born in lawful wedlock. This statute, however, or statutes identically the same, have been construed by the Supreme Courts of California, Missouri, and Wisconsin. The Supreme Court of California held, under this provision of the statute, in the case of Graham v. Bennet, 2 Cal. 503, that children of a void marriage were legitimate and the heirs of their parents. The Supreme Court of Wisconsin, Watts v. Owens, 62 Wis. 512, 22 N. W. 720, held under a similar statute:

"'A child born within the wedlock of a regular marriage which for any reason (as that the woman had another husband living) is null in law is nevertheless the legitimate child and heir of both parents.'

"The Missouri Supreme Court, in the case of Dyer v. Brannock, 66 Mo. 391, 27 Am. Rep. 359, held under statute identical with ours:

"'Under section 8, p. 328, Rev. Stat. 1825, which provides that the issue of all marriages deemed null in law * * * shall nevertheless be legitimate, a child of such a marriage will inherit and transmit by descent the same as if born of a lawful marriage.'

"Under this statute, and the decisions construing similar provisions, it is very evident that Elizabeth Copeland is the legitimate child and the heir of Joe Copeland and Martha Copeland, and inherits and transmits by descent property the same as if she had been born of lawful wedlock. * * *"

This case was followed in the case of Brokeshoulder v. Brokeshoulder, 84 Okla. 250, 204 Pac. 284.

This court next passed upon and interpreted said section of law in the case of Page v. Roddie, 92 Okla. 236, 218 Pac. 1092, wherein it added the element of good faith in construing said section. In the body of the opinion, the court said:

"The statute applies where the parties, in good faith, attempt to contract the marriage relation, against which some legal barrier exists, and not to a relation immorally entered into."

In the recent case of Sisney v. Sisney, 132 Okla. 90, 269 Pac. 349, in an opinion written by one of the honored members of this court, construing that clause of section 11303, C. O. S. 1921, under consideration, the court said in the syllabus of said case:

"Under section 11303, C. O. S. 1921, which provides that 'the issue of all marriages null in law, or dissolved by divorce, are legitimate,' a child begotten before, but born after, marriage, is legitimate, though the marriage was void because the husband had a living wife at the time of the marriage"

—and in the body of the opinion, the court commented upon said section as follows:

"At common law and under our statutes, where a question of legitimacy arises, the presumption is in favor of the legitimacy of a person born in wedlock. Section 8022, C. O. S. 1921, provides that all children born in wedlock are presumed to be legitimate. Assuming that the plaintiff had never been married and was capable of contracting a marriage at the time he married defendant, the child would be presumed to be legitimate. He, however, could not lawfully contract a marriage because he had a living

wife. When the Legislature said, 'The issue of all marriages null in law, or dissolved by divorce, are legitimate,' we think it intended to make the issue of such void marriages legitimate to the same extent and in the same manner they would have been had the attempted marriage not been void.

"In the instant case, if the marriage had been valid, the child would be presumed to be legitimate, although it was begotten before the marriage. Since the mother was capable of contracting the marriage relation, and since she in good faith believed the father was capable of contracting the marriage relation, and, acting upon this belief, a marriage ceremony was performed, and the plaintiff and defendant lived together as husband and wife until some two or three months after the child was born, under section 11303, supra, the child is legitimate. * * *"

In the Copeland Case, the court said that that portion of section 11303 under consideration had never been construed by this court, but its language seems too plain for construction, and, if it means what it says, a child born of a marriage contracted and consummated in accordance with the law, though void on account of the disability of one of the parties, such as having a living spouse, is legitimate, and being legitimate, as a natural consequence, it would inherit from its parents as though it had been born in lawful wedlock.

In the Page Case cited, the court added a new element of good faith, stating that the statute applies where the parties in good faith attempt to contract the marriage relation, against which some legal barrier exists. In the case at bar the trial court found that Billie Atkins and Bertie Miller attempted their marriage in good faith, which would bring the case at bar within the requirements of the rule as enunciated in the Page Case.

In the Sisney Case, the court held that even though the marriage was absolutely void, the issue is legitimate and would inherit just the same as though the attempted marriage had been valid.

Plaintiffs urge strenuously that the issue of Billie Atkins and Bertie Miller could not be legitimate under any circumstances so as to inherit, because the marriage of these two persons was prohibited by law,—and that they, in attempting to consummate said marriage, committed a crime.

In the Sisney Case, the father had a living wife from whom he had not been divorced at the time of entering into his second marriage, which placed him in the position of having two living wives at the same time without having a divorce from either of them. This, under our law, would make him a bigamist, and the crime of bigamy is a felony. Yet, under such circumstances, this court held that children born of the second attempted marriage were legitimate under our statute, and that they inherited property from their bigamist father. This holding of the court disposes of the contention of plaintiffs.

Billie Atkins was an elderly Creek Indian who, in good faith, attempted to enter into the marriage relation with Bertie Miller. They brought into the world the three minor children who are parties to this suit.

He supported the children and their mother up to the date of the mother's death, and after her death he nurtured and supported his children as a father should. To him they were his children. There existed in his bosom a love for his children just as any father should have. In the mind of this simple red man, these children were his children.

The trial court found that Billie Atkins entered into the attempted marriage in absolute good faith, and that said offspring were brought into this world in good faith.

In accordance with the above authorities cited, we hold that the offspring of Billie Atkins and Bertie Miller be and are the legitimate offspring of Billie Atkins, deceased, and as such, their guardian and representative is entitled to prior right in the appointment as administrator of said deceased; that the judgment of the district court of Wagoner county, Okla., affirming the judgment of the county court of Wagoner county, Okla., appointing W. H. Rust administrator of the estate of Billie Atkins, deceased, be, and the same is, hereby affirmed.

, HEFNER, SWINDALL, ANDREWS, and KORNEGAY, JJ., concur. LESTER, C. J., concurs in the conclusion. McNEILL, J., disqualified. CLARK, V. C. J., and RILEY, J., dissent.

---

RILEY, J. (dissenting). Billie Atkins, a full-blood Creek Indian, purported to marry Bertie Miller, a negro woman, on July 31, 1920. Three children were born of that relation. Billie Atkins died in the year 1929. By virtue of the view of law contained in the majority opinion, the issue of that relation inherit of the property of Billie Atkins. I cannot agree.

Section 11, art. 23, Constitution of Okla-

homa, defines "colored race" and "negro" and "negro race" to mean and apply to all persons of African descent, and specifies that the term "white race" includes all other persons.

Section 7488, C. O. S. 1921, provides, in substance, that "marriage is a personal relation arising out of a civil contract to which the consent of parties legally competent of contracting and entering into it is necessary, and the marriage relation shall only be entered into, maintained, or abrogated as provided by law."

Section 7489, C. O. S. 1921, prohibits marriage between relatives, and declares such marriages to be "incestuous, illegal, and void."

In Fearnow v. Jones, 34 Okla. 694, 126 Pac. 1015, this court considered an incestuous marriage, held it void and not merely voidable, and determined that the woman, Luttie B. Jones, could not be the widow of deceased because they were first cousins. Consequently, it was decided, despite the marriage ceremony and subsequent cohabitation, that she could not inherit from the deceased for reason of the prohibitive statute.

Section 7499, C. O. S. 1921, is the statute applicable to the case at bar. It provides:

"The marriage of any person of African descent, as defined by the Constitution of this state, to any person not of African descent, or the marriage of any person not of African descent to any person of African descent shall be unlawful and is hereby prohibited within this state."

Section 7500, C. O. S. 1921, declares that such miscegenation is a felony punishable by fine not to exceed $500 and imprisonment in the penitentiary not to exceed five years.

Section 7501, C. O. S. 1921, declares the performance of a ceremony in such a marriage to be a felony.

Section 7502, C. O. S. 1921, declares it to be a misdemeanor to issue a license to a person for such a marriage.

So, it is evident that the pretended marriage between this Indian and negro was illegal and void. No marriage, in fact, could have been consummated in Oklahoma, at the time heretofore indicated or thereafter, between a negro and an Indian or white, either by ceremony, common law, or statute. So says the statute. So says the court. Blake v. Sessions, 94 Okla. 59, 220 Pac. 876; Eggers v. Olson, 104 Okla. 297, 231 Pac. 483.

Two essentials of a valid marriage are capacity and consent. By law these persons were denied capacity; they were not capable of consenting.

In Blake v. Sessions, supra, this court held: "No right can grow out of such marriage, founded upon the violation of this law."

In Eggers v. Olson, supra, this court held a miscegenous marriage void and "impossible of ratification," and that "no rights of person or property are conferred by such marriage." There it was said: "The inhibition is not only against the form, but the substance also," and "the inhibition, like the incestuous marriage is in the blood, and the reason for it is stronger still." In re Walker's Estate (Ariz.) 46 Pac. 67; Keen v. Keen, 184 Mo. 358, 83 S. W. 526; Moore v. Moore (Ky.) 98 S. W. 1027; Greenhow v. James, 80 Va. 636, 56 Am. Rep. 603.

The reason for this rule of law is given in 18 R. C. L. 409, and accepted by this court in the Eggers Case. It is:

"Civilized society has the power of self-preservation, and marriage being the foundation of such society, most of the states in which the negro forms an element of any note have enacted laws inhibiting intermarriage between the white and black races; and the courts, as a general rule, have sustained the constitutionality of such statutes. Where such prohibition is contained in a state Constitution, it is self-acting in the absence of any other provision in the same instrument limiting its operation. Statutes forbidding intermarriage by the white and black races were without doubt dictated by wise statesmanship, and have a broad and solid foundation in enlightened policy, sustained by sound reason and common sense. The amalgamation of the races is not only unnatural, but is always productive of deplorable results. The purity of the public morals, the moral and physical development of both races, and the highest advancement of civilization, under which the two races must work out and accomplish their destiny, all require that they should be kept distinctly separate, and that connections and alliances so unnatural should be prohibited by positive law and subject to no evasion."

In Scott v. State, 39 Ga. 321, cited in State v. Tutty, 41 Fed. 755, accepted by this court in Blake v. Sessions, it was said in regard to prohibiting marriages between negroes and whites:

"I do not hesitate to say that it was dictated by wise statesmanship, and has a broad and solid foundation in enlightened policy, sustained by sound reason and common sense. The amalgamation of races is not only unnatural, but it is always productive of deplorable results. * * * Such connections never elevate the inferior race to the

position of the superior, but they bring down the superior to that of the inferior. They are productive of evil, and evil only, without any corresponding good."

In Noel v. Ewing, 9 Ind. 37, marriage is declared to be "in every enlightened government it is pre-eminently the basis of civil institutions, and thus an object of the deepest public concern."

In Re Walker's Estate, supra, it was held that the issue of a miscegenous marriage "has no right of heirship from the father." See, also, Leonard v. Braswell, 99 Ky. 528, 36 S. W. 684, 36 L. R. A. 275.

Many of these cases considered legitimate statutes such as ours (sec. 11303, C. O. S. 1921) providing "The issue of all marriages null in law, or dissolved by divorce are legitimate," and in all of them it was held that such a statute did not render legitimate the child of · such pretended marriages which, in fact, were miscegenous. The reason being that such a marriage is void, not merely voidable, and that the relation could never ripen into a valid marriage no matter how long continued or maintained.

The Copeland Case, 73 Okla. 252, 175 Pac. 764, the Brokeshoulder Case, 84 Okla. 249, 204 Pac. 284, Page v. Roddie, 92 Okla. 236, 218 Pac. 1092, and Sisney, v. Sisney, 132 Okla. 90, 269 Pac. 349, relied upon in the majority opinion, concerned marriages other than those classified as incestuous and miscegenous. 7 C. J. 948, states the rule governing the latter class. There it is pointed out that, in many states, the statute providing the issue of a null marriage shall neverthe-less be deemed legitimate, has no application to the issue of incestuous marriages or those between persons of different color.

The rigors of common law as to bastards and their right to inherit have been softened by legitimation statutes and properly so, but self perpetuation of a race arises from instinct put into man by his creator. It is recognized by law.

"A state, in the exercise of its sovereign power has the right to impose upon its citizens an incapacity to contract marriage by means of a positive policy of the state for the protection of the morals and good order of society against serious social evils." Blake v. Sessions, 94 Okla. 59, 220 Pac. 876.

The surest and quickest method of producing a mixed-blood white and negro race, is to destroy by judicial decree the effect of prohibitive statutes which seek to prevent an amalgamation.

It is true that section 7490, supra, expressly forbids and prohibits every male under 18 years of age and every female under the age of 15 years from entering into the marriage relation, with a proviso permitting such marriages in case of seduction or bastardy, but with a restriction contained in the proviso so that the same will not apply in case of an incestuous relation.

The prohibition of this section of the statute does not make such a marriage of youths void, but merely voidable (Hunt v. Hunt, 23 Okla. 490, 100 Pac. 541, 22 L. R. A. [N. S.] 1202), the reason being that consent as required is imperfect for want of age. The elapse of time cures that imperfection and the relation ripens into a perfect marriage.

The marriage between persons of nonage under the statute as at common law is imperfect, becoming perfect only by affirmance when requisite age is obtained; until disaffirmance, it is a marriage in fact. Beggs v. State, 55 Ala. 108; Koonce v. Wallace, 52 N. C. 194; Holtz v. Dick, 42 Ohio St. 23, 51 Am. Rep. 791; State ex rel. Scott v. Lowell, 78 Minn. 166, 46 L. R. A. 440, 79 Am. St. Rep. 358, 80 N. W. 877.

The marriage in case of nonage being one in fact, in the absence of disaffirmance, but in the presence of death of one of the parties prior to attainment of statutory age, the marriage is in all respects valid. Courtright v. Courtright, 11 Ohio Dec. Reprint 413; Mitchell v. Mitchell, 117 N. Y. Supp. 671. The point is that such a marriage is voidable, but not void. Willits v. Willits, 76 Neb. 228, 5 L. R. A. (N. S.) 767, 107 N. W. 379; Elliott v. Elliott, 77 Wis. 634, 10 L. R. A. 568, 46 N. W. 806; Smith v. Smith, 84 Ga. 440, 8 L. R. A. 362, 11 S. E. 496. Even though the statute in some states denominates the marriage for nonage "void," by a continued cohabitation after reaching age, there is ratification. State v. Parker, 106 N. C. 711, 11 S. E. 517; Walls v. State, 32 Ark. 565. But our court has held "a marriage is void when it has no legal effect, confers no marital or property rights, imposes no duties or liabilities, and is incapable of subsequent ratification." Hunt v. Hunt, supra. Such is a miscegenous marriage.

This court states the rule in Re Love's Estate, 42 Okla. 478, 142 P. 305:

"A marriage may be considered voidable when it is possible, under any circumstances, for the plaintiffs to contract the marriage, or subsequently to ratify it, while it should be considered void if it is impossible for them under the law to contract it, and if it is impossible for them subsequently by any

conduct to ratify it, and if the statute expressly disclares that it is void."

So, as applied to a miscegenous or incestuous relation, neither time nor anything else can ripen the prohibited relation into a lawful marriage. There cannot be a marriage. Consequently, there is no "marriage" as the word is used in section 11303, supra, and being no marriage, the issue is not of a marriage, but of an illicit relation, incapable of inheriting from the father.

This statute (sec. 11303) had its origin in Virginia. The Oklahoma statute is a transcript of the Virginia statute. The original bill was drafted and reported by a committee of which Thomas Jefferson was a member. Its purpose was to omit the exception of the civil law and the law of Scotland, as to adulterine bastards, and to disregard the common law of England, which prevented all bastards from becoming legitimated. The courts of Virginia construed the statute as having abrogated the exception of the civil law as to adulterine bastards. Stones v. Keeling (1804) 5 Call (Va.) 143; Brown v. Turberville, 2 Call (Va.) 390; Templeman v. Steptoe, 1 Munf. 339; Davis v. Rowe, 6 Rand. (Va.) 355; Garland v. Harrison, 8 Leigh (Va.) 368. We adopted the statute in this state in view of the construction placed upon it by the courts of Virginia. The Virginia court held, in Stones v. Keeling, supra, that "the issue of a woman by a second marriage which took place during the lifetime of her first husband, are legitimate after the death of their father," the reason being given that it was not "the case of incestuous marriages, where the parties, with full knowledge of the everlasting bar which does and ought to exist between them, enter into this contract, and produce an innocent offspring in defiance of laws, human or divine."

In Heckert v. Hile, 90 Va. 390, 18 S. E. 841, again the Virginia court held the children of a bigamous marriage legitimate and capable of inheriting, but said the decision was not contrary to Greenhow .v. James, 80 Va. 636, 56 Am. Rep. 603, for the latter case concerned the issue of a miscegenous relation, the illegitimate children of a white person by a negro. The court said:

"The law concerning marriages is to be construed and understood in relation to those persons only to whom that law relates, and not to a class of persons clearly not within the idea of the Legislature when contemplating the subject of marriage and legitimacy."

Statutes legitimating the issue of all marriages which are null in law, or are dissolved by divorce, do not apply to or legitimate the issue resulting from a meretricious cohabitation, where there was never any kind of a marriage, either ceremonial, statutory, or common law, but such children are merely the progeny of illicit intercourse. Evatt v. Miller, 114 Ark. 84, 169 S. W. 817, L. R. A. 1916C, 759; Henry v. McNealey, 24 Colo. 456, 50 Pac. 37; Keen v. Keen, 184 Mo. 358; 201 U. S. 319, 50 L. Ed. 772, 26 Sup. Ct. Rep. 494. Moreover, such a statute, section 11303, supra, while applying to children begotten before the marriage, but born afterward (Swinney v. Klippert [Ky.] 50 S. W. 841) yet, it does not apply to children born before the void or voidable ceremony took place. Adams v. Adams, 154 Mass. 290, 13 L. R. A. 275, 28 N. E. 260; Greenhow v. James, 56 Am. Rep. 603.

Children of bigamous marriages may inherit, for, in such case, there is the possibility of the relation ripening into a lawful marriage (Copeland v. Copeland, supra) yet, as was decided in Virginia in the Heckert Case, supra, that case does not decide the question as to the issue of a miscegenous relation, where, under the law, there is no possibility of a lawful relation, and where as a consequence the legitimation statute (11303) cannot and was never intended to apply.

In Page v. Roddie, 92 Okla. 236, 218 Pac. 1092, relied upon in the majority opinion, it was held that section 11303, supra, had "no application to the issue of parties assuming, in bad faith, matrimonial relations in violation of law." There it was held the second marriage was not matrimonial, but meretricious In the case at bar, there never was and never could be a marriage between the parties. There could be no good faith in the matrimonial relation—it was unlawful—it was meretricious—the issue could not, as in the Roddie Case, inherit. See, also, the case of Byington v. Wilhelm, 120 Okla. 190, 250 Pac. 1025, which denies the application of the provisions of section 11303, to the issue of a relation not matrimonial, but immoral, entered into with full knowledge of its meretricious character.

Sisney v. Sisney, 132 Okla. 90, 269 Pac. 349, relied upon in the majority opinion, is simply a case concerning the issue of a bigamous marriage. That question was rightfully determined in accord with the Oklahoma decisions, and in view of the legitimation statute, as construed by the state originating it, Virginia, as heretofore recited, it does not support the rule as to the issue of a miscegenous or meretricious relation.

For these reasons, I dissent to the majority opinion.

CLARK, V. C. J., concurs.

Note.—See under (1) anno. L. R. A. 1916E, 659; 24 A. L. R. 586; 3 R. C. L. p. 776; R. C. L. Perm. Supp. p. 892. (2) anno. 1 L. R. A. (N. S.) 774; 3 R. C. L. p. 723; R. C. L. Perm. Supp. p. 879.