Billie Atkins, a full-blood Creek Indian, purported to marry Bertie Miller, a negro woman, on July 31, 1920. Three children were born of that relation. Billie Atkins died in the year 1929. By virtue of the view of law contained in the majority opinion, the issue of that relation inherit of the property of Billie Atkins. I cannot agree.
Section 11, art. 23, Constitution of Oklahoma, *Page 298 
defines "colored race" and "negro" and "negro race" to mean and apply to all persons of African descent, and specifies that the term "white race" includes all other persons.
Section 7488, C. O. S. 1921, provides, in substance, that "marriage is a personal relation arising out of a civil contract to which the consent of parties legally competent ofcontracting and entering into it is necessary, and the marriage relation shall only be entered into, maintained, or abrogated as provided by law."
Section 7489, C. O. S. 1921, prohibits marriage between relatives, and declares such marriages to be "incestuous, illegal, and void."
In Fearnow v. Jones, 34 Okla. 694, 126 P. 1015, this court considered an incestuous marriage, held it void and not merely voidable, and determined that the woman, Luttie B. Jones, could not be the widow of deceased because they were first cousins. Consequently, it was decided, despite the marriage ceremony and subsequent cohabitation, that she could not inherit from the deceased for reason of the prohibitive statute.
Section 7499, C. O. S. 1921, is the statute applicable to the case at bar. It provides:
"The marriage of any person of African descent, as defined by the Constitution of this state, to any person not of African descent, or the marriage of any person not of African descent to any person of African descent shall be unlawful and is hereby prohibited within this state."
Section 7500, C. O. S. 1921, declares that such miscegenation is a felony punishable by fine not to exceed $500 and imprisonment in the penitentiary not to exceed five years.
Section 7501, C. O. S. 1921, declares the performance of a ceremony in such a marriage to be a felony.
Section 7502, C. O. S. 1921, declares it to be a misdemeanor to issue a license to a person for such a marriage.
So, it is evident that the pretended marriage between this Indian and negro was illegal and void. No marriage, in fact, could have been consummated in Oklahoma, at the time heretofore indicated or thereafter, between a negro and an Indian or white, either by ceremony, common law, or statute. So says the statute. So says the court. Blake v. Sessions, 94 Okla. 59,220 P. 876; Eggers v. Olson, 104 Okla. 297, 231 P. 483.
Two essentials of a valid marriage are capacity and consent. By law these persons were denied capacity; they were not capable of consenting.
In Blake v. Sessions, supra, this court held: "No right can grow out of such marriage, founded upon the violation of this law."
In Eggers v. Olson, supra, this court held a miscegenous marriage void and "impossible of ratification," and that "no rights of person or property are conferred by such marriage." There it was said: "The inhibition is not only against the form, but the substance also," and "the inhibition, like the incestuous marriage is in the blood, and the reason for it is stronger still." In re Walker's Estate (Ariz.) 46 P. 67; Keen v. Keen, 184 Mo. 358, 83 S.W. 526; Moore v. Moore (Ky.) 98 S.W. 1027; Greenhow v. James, 80 Va. 636, 56 Am. Rep. 603.
The reason for this rule of law is given in 18 R. C. L. 409, and accepted by this court in the Eggers Case. It is:
"Civilized society has the power of self-preservation, and marriage being the foundation of such society, most of the states in which the negro forms an element of any note have enacted laws inhibiting intermarriage between the white and black races; and the courts, as a general rule, have sustained the constitutionality of such statutes. Where such prohibition is contained in a state Constitution, it is self-acting in the absence of any other provision in the same instrument limiting its operation. Statutes forbidding intermarriage by the white and black races were without doubt dictated by wise statesmanship, and have a broad and solid foundation in enlightened policy, sustained by sound reason and common sense. The amalgamation of the races is not only unnatural, but is always productive of deplorable results. The purity of the public morals, the moral and physical development of both races, and the highest advancement of civilization, under which the two races must work out and accomplish their destiny, all require that they should be kept distinctly separate, and that connections and alliances so unnatural should be prohibited by positive law and subject to no evasion."
In Scott v. State, 39 Ga. 321, cited in State v. Tutty, 41 Fed. 755, accepted by this court in Blake v. Sessions, it was said in regard to prohibiting marriages between negroes and whites:
"I do not hesitate to say that it was dictated by wise statesmanship, and has a broad and solid foundation in enlightened policy, sustained by sound reason and common sense. The amalgamation of races is not only unnatural, but it is always productive of deplorable results. * * * Such connections never elevate the inferior race to the *Page 299 
position of the superior, but they bring down the superior to that of the inferior. They are productive of evil, and evil only, without any corresponding good."
In Noel v. Ewing, 9 Ind. 37, marriage is declared to be "in every enlightened government it is pre-eminently the basis of civil institutions, and thus an object of the deepest public concern."
In Re Walker's Estate, supra, it was held that the issue of a miscegenous marriage "has no right of heirship from the father." See, also, Leonard v. Braswell, 99 Ky. 528, 36 S.W. 684 36 L. R. A. 275.
Many of these cases considered legitimate statutes such as ours (sec. 11303, C. O. S. 1921) providing "The issue of all marriages null in law, or dissolved by divorce are legitimate," and in all of them it was held that such a statute did not render legitimate the child of such pretended marriages which, in fact, were miscegenous. The reason being that such a marriage is void, not merely voidable, and that the relation could never ripen into a valid marriage no matter how long continued or maintained.
The Copeland Case, 73 Okla. 252, 175 P. 764, the Brokeshoulder Case, 84 Okla. 249, 204 P. 284, Page v. Roddie,92 Okla. 236, 218 P. 1092, and Sisney, v. Sisney,132 Okla. 90, 269 P. 349, relied upon in the majority opinion, concerned marriages other than those classified as incestuous and miscegenous. 7 C. J. 948, states the rule governing the latter class. There it is pointed out that, in many states, the statute providing the issue of a null marriage shall nevertheless be deemed legitimate, has no application to the issue of incestuous marriages or those between persons of different color.
The rigors of common law as to bastards and their right to inherit have been softened by legitimation statutes and properly so, but self perpetuation of a race arises from instinct put into man by his creator. It is recognized by law.
"A state, in the exercise of its sovereign power has the right to impose upon its citizens an incapacity to contract marriage by means of a positive policy of the state for the protection of the morals and good order of society against serious social evils." Blake v. Sessions, 94 Okla. 59,220 P. 876.
The surest and quickest method of producing a mixed-blood white and negro race, is to destroy by judicial decree the effect of prohibitive statutes which seek to prevent an amalgamation.
It is true that section 7490, supra, expressly forbids and prohibits every male under 18 years of age and every female under the age of 15 years from entering into the marriage relation, with a proviso permitting such marriages in case of seduction or bastardy, but with a restriction contained in the proviso so that the same will not apply in case of an incestuous relation.
The prohibition of this section of the statute does not make such a marriage of youths void, but merely voidable (Hunt v. Hunt, 23 Okla. 490, 100 P. 541, 22 L. R. A. [N. S.] 1202), the reason being that consent as required is imperfect for want of age. The elapse of time cures that imperfection and the relation ripens into a perfect marriage.
The marriage between persons of nonage under the statute as at common law is imperfect, becoming perfect only by affirmance when requisite age is obtained; until disaffirmance, it is a marriage in fact. Beggs v. State, 55 Ala. 108; Koonce v. Wallace, 52 N.C. 194; Holtz v. Dick, 42 Ohio St. 23, 51 Am. Rep. 791; State ex rel. Scott v. Lowell, 78 Minn. 106, 46 L. R. A. 440, 79 Am. St. Rep. 358, 80 N.W. 877.
The marriage in case of nonage being one in fact, in the absence of disaffirmance, but in the presence of death of one of the parties prior to attainment of statutory age, the marriage is in all respects valid. Courtright v. Courtright, 11 Ohio Dec. Reprint 413; Mitchell v. Mitchell, 117 N.Y. Supp. 671. The point is that such a marriage is voidable, but not void. Willits v. Willits, 76 Neb. 228, 5 L. R. A. (N. S.) 767, 107 N.W. 379; Elliott v. Elliott, 77 Wis. 634, 10 L. R. A. 568, 46 N.W. 806; Smith v. Smith, 84 Ga. 440, 8 L. R. A. 362, 11 S.E. 496. Even though the statute in some states denominates the marriage for nonage "void," by a continued cohabitation after reaching age, there is ratification. State v. Parker, 106 N.C. 711, 11 S.E. 517; Walls v. State,32 Ark. 565. But our court has held "a marriage is void when it has no legal effect, confers no marital or property rights, imposes no duties or liabilities, and is incapable of subsequent ratification." Hunt v. Hunt, supra. Such is a miscegenous marriage.
This court states the rule in Re Love's Estate, 42 Okla. 478,142 P. 305:
"A marriage may be considered voidable when it is possible, under any circumstances, for the plaintiffs to contract the marriage, or subsequently to ratify it, while it should be considered void if it is impossible for them under the law to contract it, and if it is impossible for them subsequently by any *Page 300 
conduct to ratify it, and if the statute expressly disclares that it is void."
So, as applied to a miscegenous or incestuous relation, neither time nor anything else can ripen the prohibited relation into a lawful marriage. There cannot be a marriage. Consequently, there is no "marriage" as the word is used in section 11303, supra, and being no marriage, the issue is not of a marriage, but of an illicit relation, incapable of inheriting from the father.
This statute (sec. 11303) had its origin in Virginia. The Oklahoma statute is a transcript of the Virginia statute. The original bill was drafted and reported by a committee of which Thomas Jefferson was a member. Its purpose was to omit the exception of the civil law and the law of Scotland, as to adulterine bastards, and to disregard the common law of England, which prevented all 'bastards from becoming legitimated. The courts of Virginia construed the statute as having abrogated the exception of the civil law as to adulterine bastards. Stones v. Keeling (1804) 5 Call (Va.) 143; Brown v. Turberville, 2 Call (Va.) 390; Templeman v. Steptoe, 1 Munf. 339; Davis v. Rowe, 6 Rand. (Va.) 355; Garland v. Harrison, 8 Leigh (Va.) 368. We adopted the statute in this state in view of the construction placed upon it by the courts of Virginia. The Virginia court held, in Stones v. Keeling, supra, that "the issue of a woman by a second marriage which took place during the lifetime of her first husband, are legitimate after the death of their father," the reason being given that it was not "the case of incestuous marriages, where the parties, with full knowledge of the everlasting bar which does and ought to exist between them, enter into this contract, and produce an innocent offspring in defiance of laws, human or divine."
In Heckert v. Hile, 90 Va. 390, 18 S.E. 841, again the Virginia court held the children of a bigamous marriage legitimate and capable of inheriting, but said the decision was not contrary to Greenhow v. James, 80 Va. 636, 56 Am. Rep. 603, for the latter case concerned the issue of a miscegenous relation, the illegitimate children of a white person by a negro. The court said:
"The law concerning marriages is to be construed and understood in relation to those persons only to whom that law relates, and not to a class of persons clearly not within the idea of the Legislature when contemplating the subject of marriage and legitimacy."
Statutes legitimating the issue of all marriages which are null in law, or are dissolved by divorce, do not apply to or legitimate the issue resulting from a meretricious cohabitation, where there was never any kind of a marriage, either ceremonial, statutory, or common law, but such children are merely the progeny of illicit intercourse. Evatt v. Miller,114 Ark. 84, 169 S.W. 817, L. R. A. 1916C, 759; Henry v. McNealey, 24 Colo. 456, 50 P. 37; Keen v. Keen, 184 Mo. 358;201 U.S. 319, 50 L.Ed. 772, 26 Sup. Ct. Rep. 494. Moreover, such a statute, section 11303, supra, while applying to children begotten before the marriage, but born afterward (Swinney v. Klippert [Ky.] 50 S.W. 841) yet, it does not apply to children born before the void or voidable ceremony took place. Adams v. Adams, 154 Mass. 290, 13 L. R. A. 275, 28 N.E. 260; Greenhow v. James, 56 Am. Rep. 603.
Children of bigamous marriages may inherit, for, in such case, there is the possibility of the relation ripening into a lawful marriage (Copeland v. Copeland, supra) yet, as was decided in Virginia in the Heckert Case, supra, that case does not decide the question as to the issue of a miscegenous relation, where, under the law, there is no possibility of a lawful relation, and where as a consequence the legitimation statute (11303) cannot and was never intended to apply.
In Page v. Roddie, 92 Okla. 236, 218 P. 1092, relied upon in the majority opinion, it was held that section 11303, supra, had "no application to the issue of parties assuming, in bad faith, matrimonial relations in violation of law." There it was held the second marriage was not matrimonial, but meretricious. In the case at bar, there never was and never could be a marriage between the parties. There could be no good faith in the matrimonial relation — it was unlawful — it was meretricious — the issue could not, as in the Roddie Case, inherit. See, also, the case of Byington v. Wilhelm,120 Okla. 190, 250 P. 1025, which denies the application of the provisions of section 11303, to the issue of a relation not matrimonial, but immoral, entered into with full knowledge of its meretricious character.
Sisney v. Sisney, 132 Okla. 90, 269 P. 349, relied upon in the majority opinion, is simply a case concerning the issue of a bigamous marriage. That question was rightfully determined in accord with the Oklahoma decisions, and in view of the legitimation statute, as construed by the state originating it, Virginia, as heretofore recited, it does not support the rule as to the issue of a miscegenous or meretricious relation. *Page 301 
For these reasons, I dissent to the majority opinion.
CLARK, V. C. J., concurs.
Note. — See under (1) anno. L. R. A. 1916E, 659; 24 A. L. R. 586; 3 R. C. L. p. 776; R. C. L. Perm. Supp. p. 892. (2) anno. 1 L. R. A. (N. S.) 774; 3 R. C. L. p. 723; R. C. L. Perm. Supp. p. 879.